Gaston, J.
 

 Two questions are presented for our consideration on this special verdiet, and for the purpose of per-specuity it is necessary that they should be examined separately. The first is, whether the defendant committed an as - sauit-; and the second, if he did., whether that assault was justified as having been committed in the rightful defence of his property.
 

 ' Upon the first question, this court entertains the same opinion, which was expressed in the Superior Court. There are several ancient cases in which it was held, that an assault might be committed by threats of future violence ; but it has long been settled, that words alone cannot constitute an assault. They may endanger the public peace, but do not break it. There is no assault, unless there be some
 
 act,
 
 amounting to an attempt or offer to commit personal violence. The instances usually given of such attempts or offers to do wrong to the person of another, are “ by the striking at him with or without a weapon, or presenting a gun at him within a distance which the gun will carry, or pointing a pitch-fork at him standing within the reach of it, or by holding up one’s fist at him in an angry threatening manner.” 1 Hawk. c. 15. The law regards these acts as breaches of the peace, because they
 
 directly
 
 invade that personal security, which the law guaranties to every citizen.— They do not excite an apprehension that his person may be attacked on a future occasion, and thus authorize a resort to cautionary remedies against it; but they are the beginnings of an attack, excite terror of immediate personal harm or
 
 *189
 
 disgrace, and justify a resort to actual violence to repel the impending injury and insult. But even acts, which
 
 facie
 
 and unexplained are undoubtedly assaults, like other acts which are not unequivocal in their character, may be shewn to be in truth different from what they purport to be; that they are not attempts or offers to do harm, but merely angry gestures without any accompanying purpose of mischief. The attending circumstances may plainly shew this, and, among other circumstances, the declarations of the party at the time, inasmuch as such declarations are ordinarily indicative of the party’s purpose, are very proper to be considered and weighed. The ordinary illustration of the doctrine, that a seeming assault may be explained away by the declarations of the supposed assailant, is the very familiar case, where a man laid his hand on his sword and said to the person, with whom he was quarrelling, “if it were not assise time, I would not take such language from you.” There is also an illustration of it in the case of the
 
 State
 
 v
 
 Crow,
 
 1 Ired. Rep.
 
 375,
 
 where the defendant, when he raised the whip, used the words, “ if you were not an old man, I would knock you down.” In both it was held to be a fair subject of enquiry, whether, at the time these acts were done, there was a present purpose of doing harm, and that, if there was not, the acts did not amount to an assault. But these, and all the cases within our recollection where this doctrine has been held, were cases, in which there was a declared intent not to do harm at the time. The present case is one of a very different character. The act was not only apparently a most dangerous assault, but accompanied with a present purpose to do great bodily harm ; and the only declaration, by which its character is attempted to be changed, is, that the assailant was not determined to execute his savage purpose unconditionally and without a moment’s delay. He had commenced the attack and raised the deadly weapon and was in the attitude to strike, but suspended the blow, to afford the object of his vengeance an opportunity to buy his safety, by compliance with the defendant’s terms. To hold that such an act, under such circumstances, was not an offer of violence — not an attempt to commit violence, would
 
 *190
 
 be, we think, to outrage principle and manifest an utter want of that solicitude for the preservation of peace, which characterizes our law, and which should animate its administra-iors- To every purpose — both in fact and in law — the attack on the prosecutor was begun — and in the pause, which intervened before its consummation, most happily.for both parties an arrangement was made, which prevented the probably fatal result. But this pause — though intentional, and announced when the attack began — does not prevent that attack from being an offer or attempt to strike. If a ruffian were to level his rifle at a traveller, and announce to him that he might have fifteen minutes to make his peace with his'God — and the unfortunate man should save his life by prayers, by remonstrance, by money, or by any other means before the expiration of that time, could it be pretended that there had been no attempt nor offer to hurt him, because the intent was not to kill instantaneously, and therefore did not accompany the act? Will it be doubted, if a bully should present his pistol at a 'citizen and order him, under pain of ■death, not to walk on the same side of the street with him, whether there was an offer of violence, because the purpose to kill was not absolute but conditional merely ? Wherever the act is done
 
 in fart execution
 
 of a purpose of violence — whether that purpose be absolute or provisional — makes no •difference as respects the question, whether the act be an assault. In both cases the assailant equally violates the public peace. In both he breaks down the barrier which the law has erected for the security of the citizen. In the former he sets •up none in its place. In the latter, he substitutes for it the protection of his grace and favor.
 

 Upon the second question, the opinion of this court differs from that of the Superior Court. If an assault be committed, but it is done in the lawful defence of one’s person or property; the defendant cannot, in a civil action, give this justification in evidence under the plea of not guilty, but must set it Forth to be judged of by the court by a special plea. The act done was in law an assault, notwithstanding it was rightfully done. His plea therefore confesses the assault charged in the declaration, but avers that the plaintiff
 
 *191
 
 •cannot maintain an action therefor, because of the special circumstances rendering the ;.ct, complained of, one, the defendant might of right do. But upon an indictment for an assault, the traverser may, under the plea of not guilty, shew any matter of justification. There can be no of-fence against the community, where the accused has done no more than the law sanctions, and it is most convenient for the accused generally, that they should not be tied down to the strict rules of pleading. But in criminal, as in civil cases, if there be an assault, it cannot be justified other than by shewing specially all the circumstances which render the act rightful; and the sufficiency of the alleged justification is a matter of law. The defendant in this case is guilty of an assault, unless the facts found by the verdict, make up a legal justification. In the judgment of this court, they do not.
 

 In the verdict it is found that the gun, which the constable seized under they?, fa. against the goods of
 
 the
 
 defendant, was his
 
 “
 
 arms for muster,” but it is not found that the / constable either knew that fact, or was notified thereof by J the defendant or any other person, Being his arms for mus- I ter, the gun was by law privileged from seizure. But we are
 
 J
 
 not prepared to hold that the seizure was necessarily a tres-' pass. If a sheriff under a writ against A. arrest B, he is guilty of a trespass, because he acts wholly without authority. But it he arrest, under a valid writ, one who is privileged from arrest, he is not guilty of a trespass. See
 
 Countess of Rutland’s
 
 case, 6 Co. 53.
 
 Tarleton
 
 v Fisher, Doug. 672.
 
 Cropley v Shaw, 2
 
 Bl. Rep. 1085.
 
 Cameron v Lightfoot,
 
 Id. 1190.
 
 Parsons
 
 v Lloyd, 3 Wils. 340. Watson on Sheriffs, 91, 92. The appropriate remedy for (he privileged person so arrested, is to move the court for his discharge. So, if a sheriff, under a
 
 fi.fa.
 
 against the goods of A., take the goods of B., he is a trespasser. But it would seem, that if under the
 
 fi.fa.
 
 he take goods in a privileged place, as in the King’s palace, or take goods which the law exempts from seizure, as the goods of a certificated bankrupt, or of a person discharged under an insolvent act, he is not a
 
 *192
 
 tresspasser, but the party must apply to the court for relief. Watson on Sheriffs, 174, 175.
 
 Winter
 
 v Miles, 10 East, 578.
 
 Lister
 
 v
 
 Mundell,
 
 1 Bos. & Pul. 427. And the distinction in both classes of cases seems reasonable. The sheriff or officer, acting beyond the mandate of the writ, is necessarily a wrong-doer. He must therefore take the responsibility of determining, whether the person or the goods taken be the person or goods, which he is ordered to take.— But privilege — or exemption — is a legal advantage, which may or may not be claimed. Whether the person or goods be privileged or not, he has not the means nor the judgment to decide. Among the articles privileged from seizure, are “ necessary school books.” Must the officer decide at his peril what school books are necessary ? One bed and furniture, one bible, one loom, one hymn book, &c. are privileged. Which of these, if there be many, must he leave, and how is he to know whether the defendant in execution has but one? But, at all events, if the seizure of privileged goods can make the officer a trespasser, we are satisfied that it can only be, where he seizes with a knowledge that they are privileged goods. Our opinion, therefore, is, that the substratum of the alleged justification is removed in this base. It does not appear that the constable was a trespasser.
 

 But we should be reluctant to decide the case upon this ground only, as possibly it was au inadvertent omission in the verdict in not stating, that the constable knew that the gun seized was the defendant’s arms for muster ; and, therefore, we proceed to a further consideration of the justification claimed for the assault. Assuming, then, that the constable had wrongfully taken the gun, and that the defendant had a right to require its return, and that exertion of force, nothing short of that which was begun on the part of the defendant, would have availed to compel its return, in our opinion the assault is not justified. It was made
 
 with a deadly weapon,
 
 which, if used, would have probably occasioned death, and made without any previous resistance on the part of the officer. It was, therefore, an assault with in
 
 *193
 

 tent to
 
 kill. If this intent were lawful,- the assault with that intent was lawful. If this intent were' unlawful, an with that intent cannot stand justified. Now, when it is said that a man may rightfully Use as much force, as is necessary for the protection of his person or property, it should be recollected that this rule is subject to this most important modification, that he shall not,- except in extreme cases, eh-danger human life or great bodily harm. It is not every right of person, and still less of property, that can lawfully be asserted, or every wrong, that may rightfully be redressed by extreme remedies. There is a-recklessness — a wanton disregard of humanity and social duty — in taking or endeavoring to take the life of a fellow being, in order to save one’s self from'a comparatively slight wrong — which is essentially wicked, and which the law abhors. You- may not kill, because you cannot otherwise effect your object, although the object sought to be effected is right. You can only kill to save life or limb, or -prevent a great crime, or to accomplish a necessary public duty. Thus an officer, acting under a legal process, has a right to arrest the person against
 
 whom
 
 it is directed, and.to retake him, if he break custody;. and for such purpose he may and ought to use necessary force — yet, if the process be in a civil case, or a misdemeanor only, and the officer, although lie Cannot otherwise arrest or retake his prisoner, intentionally kills him, it is murder. 1 Hale, 481. Foster, 271. 1 East P. C. ch. 5, s. 306, 307. Tiie purpose is indeed rightful,.but it is notone of such paramount necessity as to justify a resort to such desperate means. So it is clear, that’ if one man deliberately kills another to prevent a mere trespass on his property — whether that trespass could or could not be otherwise prevented — he is guilty of murder. If indeed he had at'first used moderate force, and this had been- returned with such violence that his own life was endangered, and then he killed from necessity, it would have been excusable homicide. Not because he could take life'to'save his property, but he. might take the life of the assailant to save his own. If these prin-
 
 *194
 
 ciptes be right, and we think they cannot be contested, it' would follow that, if unfortunately the rage of the defendant in this case had not been pacified, and the fatal blow had fallen and death ensued, it would have been a clear case of murder. If so, then the assault made was an assault with intent to commit murder. A justifiable assault with intent to commit murder is a legal solecism.
 

 This opinion must be certified to the Superior Court of Henderson, with instructions to render judgment for the State, upon the special verdict.
 

 Per- Curiam. Ordered accordingly.