### STATE v. CROOK.

[TWO CASES.]

(Filed October 27, 1903.)

1. EVIDENCE—*Witnesses—Declarations.*

> Where a prosecuting witness is asked as to a conversation and denies it, the answer to which would be calculated to show the temper and disposition of the witness, the defendant is entitled to show that the declaration was made, though the the time was not the same as that stated to the witness.

2. ASSAULT—*Excessive Force—Trespass.*

> While excessive force may not be used in removing a trespasser, the owner of the premises may use sufficient force under all the circumstances to remove him.

INDICTMENTS against Jeff Crook and Frank Crook, heard by Judge *C. M. Cooke* and a jury, at August Term, 1903, of the Superior Court of UNION County. From verdicts of guilty and judgments thereon the defendants appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Adams, Jerome & Armfield,* for Jeff Crook.
*Redwine & Stack,* for Frank Crook.

MONTGOMERY, J.    Jeff Crook was indicted for an assault and battery on Frank Crook, and Frank Crook and Sallie Crook were separately indicted for an assault and battery on Jeff Crook, in the Superior Court of Union County, and the two cases were by consent consolidated and tried together at the August Term, 1903, of that Court.    Jeff and Frank both were convicted and both appealed to this Court.    We will treat the two appeals in one case.

### JEFF CROOK'S APPEAL.

Frank Crook, as a witness for the prosecution, was asked on his cross-examination if he did not tell Jim Crook, the father of John (John being present when the affray occurred), that if John did not testify on the trial that Jeff Crook used the knucks and pistol in the fight, and did not testify as Frank wanted him to, that he would have John indicted; and if this conversation did not occur about two or three weeks after the fight.    Frank denied that any such conversation occurred there or at any other time or place.    Jim Crook was then introduced as a witness for Jeff, and it was proposed to prove by the witness that about two or three weeks after the fight Frank Crook had the conversation with him as above narrated.    The witness stated that the conversation occurred at Rachel Crook's, but that it was only about *four days* after the fight.    Frank Crook objected to the testimony offered, and the objection was sustained by the Court, and the testimony rejected on the ground that the time fixed by the witness was not the time asked about in the question to Frank Crook.    That is the only exception appearing in Jeff Crook's appeal.

Assimilating the matter sought to be proved, to-wit, the bias or temper of the witness Frank Crook toward the defendant Jeff to that of the contradiction of a witness, it was necessary,

133—43

generally speaking, to prove the time when and the place where the conversation was alleged to have occurred and the person with whom it was had; but the rule must not be iron-clad; *State v. Glynn,* 51 Vt., 579; *South R. Co. v. Williams,* 113 Ala., 620; and must not be reduced to a petty technicality. The question concerned a collateral matter, it is true, but it was calculated to show the temper and disposition of the witness, and was therefore competent and the subject of contradiction. *State v. Patterson,* 24 N. C., 346, 38 Am. Dec., 699; *Kramer v. Electric Light Co.,* 95 N. C., 277. His Honor took that view of the question, but he thought that the witness in contradiction should prove the *exact time* designated by Frank Crook of the occurrence of the conversation. We think he was in error. In *Nelson v. Iverson,* 24 Ala., 9, 60 Am. Dec., 442, the time fixed in the question to the witness was whether he heard the conversation in the spring of 1830, and the witness was allowed to be impeached by proving that the statement denied was made in February, 1830. The Court in that case said: "To suppose that with a recollection of the conversation she was shielding herself under the *letter* of the inquiry as to time, disregarding the other concurrent circumstances of place, person and subject matter, all which pointed her to the true answer, would tend more strongly to discredit her testimony than the proven contradiction; for as to the latter she may have forgotten, or the discrediting witness himself may be mistaken, while under the former hypothesis her testimony would amount to an artful evasion of the true answer. We think the proof was properly admitted."

In the editor's note on section 462 of Greenleaf on Evidence it is said on this subject: "The inquiry of the witness to be discredited must specify, it is usually said, the time, place and person (addressee) of the supposed inconsistent statement; but the fixing of this specified form is to be deprecated, for

it leads to innumerable petty technicalities; in principle and policy the inquiry need merely state enough fairly to recall the statement to the witness' mind if he has made it."

New trial.

### FRANK CROOK'S APPEAL.

There was evidence to the effect that Jeff Crook came to the home of the defendant Frank very drunk and profane; that he cursed Frank's sister and others on the premises, and that Frank took hold of him to put him in his buggy that he might get him to his home; that Jeff resisted and made an assault upon Frank with iron knucks and a pistol, inflicting severe injuries on him, and that a desperate fight took place. His Honor instructed the jury that "If Jeff Crook, after he reached Frank Crook's place, conducted himself in such a way as to make himself objectionable, as testified by some of the witnesses, Frank had the right to direct him to go away, and if he did not go away he had the right to try to gently remove him, but if he became angered in consequence of what Jeff said and assaulted him, that is, laid violent hands on him, then he would be guilty." We think there was error in that instruction. We think the true rule which should have controlled the conduct of Frank upon the evidence on the point was that he had the right in the first place to direct Jeff to leave his premises; that in case of refusal he might have laid his hands on him gently, for the purpose of removing him from his premises; and if that course did not bring about the desired result, then he might have used sufficient force under all the circumstances to put him off. The law would not authorize one to use excessive force in removing a trespasser from one's premises, but the jury should not weigh in golden scales the amount of force used for such a purpose. In following such a course it would make no difference that the owner of the premises should become angered at such an

invasion of his home. It was but natural that such a feeling should be aroused. *State v. Taylor,* 82 N. C., 554.

New trial.