STATE v. J. F. SCOTT.

(Filed September 25, 1906).

*Assaults—Defense of Property—Excessive Force—Pointing
Pistol.*

1. A person may lawfully use so much force as is reasonably necessary to
protect his property or to retake it when it has been wrongfully
taken by another or is withheld without authority; but if he use
more force than is required for the purpose, he will be guilty of an
assault.

2. The right to protect person or property by the use of such force as
may be necessary is subject to the qualification that human life
must not be endangered or great bodily harm threatened except, per-
haps, in urgent cases. The person whose right is assailed must first
use moderate means before resorting to extreme measures.

3. Where the defendant's mule had been attached by the Sheriff· and
delivered to the plaintiff in the civil action as his agent, and while
the prosecutor was using the team in hauling under the orders of
the plaintiff, the defendant suddenly appeared on the scene and
pointed a pistol at the prosecutor without demanding possession of
his property, or that he desist from using it, but merely asked him
what he was doing there, the defendant was guilty of an assault at
common law, if not under sec. 3622 of the Revisal.

INDICTMENT against J. F. Scott, heard by *Judge B. F.
Long* and a jury, at the August Term, 1906, of the Superior
Court of FRANKLIN.

The defendant was indicted for an assault on Johnson
Smith. It appears that two mules had been attached by the
Sheriff in the suit of *I. H. Kearney v. J. F. Scott,* and by him
delivered to Kearney as his agent or bailee. The jury re-
turned a special verdict, from which we make the following
extract: "In July, 1906, Richard Perry, by order of Kear-
ney, harnessed the mules to a wagon, and together with John-
son Smith started to haul lumber. The wife and sister of
the defendant went out and told them to carry the mules back
to the stable and let them stay there. In a few minutes John

STATE *v.* J. F. SCOTT.

Conyers came back driving the same team, and with the said Johnson Smith was preparing to load the wagon with lumber, the lumber being near the house of the prisoner. The prisoner went to the place with a pistol in his hand, pointed at the driver, the said John Conyers, and ordered him to turn loose the reins, which he did, leaving the team standing. The prisoner turned to Johnson Smith and asked him what he was doing there. Upon being informed that he was there helping to haul the lumber, the prisoner pointed the pistol at him and ordered him to leave, which he also· did, the prisoner still having the pistol in his hand. The mules and wagon were then sent back to the stables of Kearney. No shot was fired from the pistol. · The parties in charge of the mules were acting under orders of Kearney." Upon this verdict, the defendant was adjudged guilty, and from the sentence of the Court he appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*N. Y. Gulley* for the defendant.

WALKER, J., after stating the case: Whether Kearney, as bailee of the Sheriff, had the right to use the property, and if he did use it or permit it to be used in the manner described in the special verdict, whether the officer thereby lost his special property in the mules so that the defendant could thereafter retake them, are questions we prefer not to discuss, as the case can well be decided upon another ground which clearly sustains the judgment of the Court. The rights and duties of a sheriff with respect to property in his custody by virtue of a levy under attachment are considered in 1 Shinn on Attachment, 392. See, also, *State v. Black,* 109 N. C., 856.

A person may lawfully use so much force as is reasonably necessary to protect his property or to retake it, when it has wrongfully been taken by another or is withheld without

authority; but if he use more force than is required for the purpose, he will be guilty of an assault. So if one deliberately and at the outset kills another with a deadly weapon in order to prevent a mere trespass, it is murder; and if he offers to strike with a deadly weapon or to shoot with a pistol, under the same circumstances, before resorting to a milder mode of prevention, he shows ruthlessness and a wanton disregard of human life and social duty. *State v. Myerfield,* 61 N. C., 108.

The right to protect person or property by the use of such force as may be necessary is subject to the qualification that human life must not be endangered or great bodily harm threatened except, perhaps, in urgent cases. The person whose right is assailed must first use moderate means before resorting to extreme measures. Clark's Cr. Law (2 Ed.), 241, 242; *State v. Crook,* 133 N. C., 672. Ordinarily, whether excessive force has been used is a question for the jury. *State v. Goode,* 130 N. C., 651; *State v. Taylor,* 82 N. C., 554. In *State v. Morgan,* 25 N. C., 186, speaking of an assault with a deadly weapon to prevent a trespass, the Court, by *Gaston, J.,* says: "It is not every right of person, and still less of property, that can lawfully be asserted, or every wrong that may be rightfully redressed by extreme remedies. There is a recklessness—a wanton disregard of humanity and social duty—in taking or endeavoring to take the life of a fellow-being in order to save one's self from a comparatively slight wrong, which is essentially wicked and which the law abhors. You may not kill, because you cannot otherwise effect your object, although the object sought to be effected is right. You can only kill to save life or limb, or prevent a great crime, or to accomplish a necessary public duty." It is said in *State v. McDonald,* 49 N. C., 19: "Whether the deceased was in fact committing a trespass upon the property of the prisoner at the time when he was killed, and if he were, whether the prisoner could avail himself of it, as he assigned a different

cause for the killing, it is unnecessary for us to decide. Admitting both of these inquiries to be decided in favor of the prisoner, the homicide is still, according to the highest authorities, murder, and murder only. To extenuate the offense in such a case, however, it must be shown that the intention was not to take life, but merely to chastise for the trespass, and to deter the offender from repeating the like, and it must so appear." To the same effect is *State v. Brandon,* 53 N. C., 463.

Those are the leading cases and are considered as having settled the law in this State upon the subject. When they are tested by the principle there announced, and it is commended both by common sense and a just regard for the public peace and private security, we find no difficulty in adjudging the facts found in the special verdict sufficient to establish the defendant's guilt. John Conyers and his companion, Johnson Smith, who is the prosecutor, were putting lumber on the wagon when the defendant suddenly appears on the scene and points a pistol, presumably loaded (*State v. Cherry,* 33 N. C., 475), at the prosecutor, without demanding the possession of his property or that he desist from using it, but merely asking him what he was doing there. The return by him of the mules to Kearney shows that he at least did not think he was entitled to the possession of them. If he pointed the pistol at Conyers and Johnson in resentment for using the mules, his act was none the less criminal, but was an aggravated assault, first on Conyers and then on Johnson. In any view of the case, he was guilty of an assault at common law (*State v. Daniel,* 136 N. C., 571), if not under section 3622 of the Revisal.