## STATE OF NORTH CAROLINA v. WILSON MILLER.

### (Filed 25 May, 1966.)

1. **Homicide § 9—**

   Reasonable apprehension of future injury is an essential prerequisite to the right to take life in defense of one's habitation.

2. **Homicide § 20— Whether defendant shot in defense of home and whether he used excessive force held jury questions on evidence.**

   Evidence that a trespasser who was refused entry by the owner of a house stated that he was coming in anyway and was going to "tear the place up," and began to rip the screen from the outer door, that the owner got a pistol and returned to the hall and, without closing the inner wood and glass door, stated, "I told you not to tear my screen out," and fired the fatal shot, *held* to preclude nonsuit, it being for the jury to determine whether the shot was fired for the committed act of tearing the screen or whether the owner shot to prevent an intruder, who he had reason to believe intended to commit a felony or inflict personal injury to him or some other members of his household, from entering the dwelling, and, if so, whether defendant used excessive force under all the circumstances.

3. **Homicide § 27—**

   Where there is evidence that defendant fired the fatal shot in defense of his habitation against a trespasser, a charge on defendant's right to kill in self-defense without an instruction on the law relating to defendant's right to defend his habitation from invasion by an intruder, must be held for prejudicial error.

Moore, J., not sitting.

Appeal by defendant from *Bickett, J.,* December 1965 Session of Durham.

Defendant was indicted for murder in the first degree. When the case was called for trial, however, the solicitor announced that he would not seek a conviction for that crime, but would ask for a verdict of guilty of murder in the second degree or manslaughter, as the evidence might disclose. The jury found defendant guilty of manslaughter.

Evidence for the State tended to show the following: On May 29, 1965, at about 8:00 p.m., the State's witness, Jasper Conway, finished his work at the cafe where he was employed and started to his room in defendant's home. The deceased, Bruce Browning, who was "half drunk," announced his intention to walk along with him. When they arrived, Conway rang the bell and defendant came to the door. At the entrance were two doors. The inner, a wooden panel door, containing glass panes about 2½ x 3 feet, was open; the outer, a screen door, was closed and hooked. Defendant admitted Conway, who went to his room, but he refused entry to Browning, saying to him, "Bruce, I don't want you in here, you will only make

trouble; I don't want you in my house." Browning told defendant that he was coming in anyway, and that he was going to "tear the place up." Defendant again told him to go away; that he wanted no trouble. Browning then began to rip the screen out of the door. When he started this, defendant went for his pistol. He returned to the hall, and said, "I told you not to tear my screen out." He then fired one shot. The bullet struck deceased in the chest, passed through his heart and both lungs, and caused his death. Browning had theretofore been told to stay away from defendant's house because he "would argue and fuss" every time he came there. On one occasion a policeman had ejected him.

Defendant offered no evidence. From the judgment that he be confined in the State's Prison for 5-7 years, defendant appeals. He assigns as error the refusal of the court to grant his motion for nonsuit and omissions in his Honor's charge.

T. *W. Bruton, Attorney General, and George A. Goodwyn, Assistant Attorney General for the State.*
*Blackwell M. Brogden and Norman E. Williams for defendant appellant.*

SHARP, J. Defendant contends that the State's own evidence rebutted the presumption of unlawfulness and malice which arises from an intentional killing with a deadly weapon, and that he is entitled to an acquittal by judgment of nonsuit. We agree with the trial judge, however, that the State's evidence required its submission to the jury. Deceased was unarmed. After he had torn the screen from the outer door, defendant neither shut the panel door, nor gave him any warning of his purpose to shoot if deceased persisted in his efforts to enter the house. Instead, defendant procured his pistol, said to Browning, "I told you not to tear my screen out," and fired the fatal shot. Defendant could not justify or excuse slaying the man at his door for an act already done; reasonable apprehension of future injury is an essential prerequisite to the right to take life in defense of one's habitation. It was for the jury to say whether defendant shot to *punish* deceased for damaging his screen, or to *prevent* an intruder, whom he had reason to believe intended to commit a felony or to inflict personal injury upon him or some other member of his household, from forcibly entering his dwelling. If it were the latter, there was the further question whether defendant used force excessive under all the circumstances.| *State v. Baker,* 222 N.C. 428, 23 S.E. 2d 340; *State v. Reynolds,* 212 N.C. 37, 192 S.E. 871.

When a trespasser enters upon a man's premises, makes an assault upon his dwelling, and attempts to force an entrance into his house in a manner such as would lead a reasonably prudent man to believe that the intruder intends to commit a felony or to inflict some serious personal injury upon the inmates, a lawful occupant of the dwelling may legally prevent the entry, even by the taking of the life of the intruder. Under those circumstances, "the law does not require such householder to flee or to remain in his house until his assailant is upon him, but he may open his door and shoot his assailant, if such course is apparently necessary for the protection of himself or family. . . . But the jury must be the judge of the reasonableness of defendant's apprehension." *State v. Gray*, 162 N.C. 608, 610-11, 77 S.E. 833, 834, 45 L.R.A. (n.s.) 71, 73. *Accord, State v. Johnson*, 261 N.C. 727, 136 S.E. 2d 84; *State v. Bryson*, 200 N.C. 50, 156 S.E. 143. See Annots., Homicide or Assault in Defense of Habitation or Property, 25 A.L.R. 508 (1923); 32 A.L.R. 1541 (1924); 34 A.L.R. 1488 (1925). A householder will not, however, be excused if he employs excessive force in repelling the attack, whether it be upon his person or upon his habitation. *State v. Roddey*, 219 N.C. 532, 14 S.E. 2d 526.

The rules governing the right to defend one's *habitation* against *forcible entry by an intruder* are substantially the same as those governing his right to defend himself. 26 Am. Jur., Homicide § 167 (1940). (Compare the rules governing the right of an owner to kill in defense of his *property. Curlee v. Scales*, 200 N.C. 612, 158 S.E. 89; *State v. Scott*, 142 N.C. 582, 55 S.E. 69, 9 L.R.A. (n.s.) 1148; *State v. Crook*, 133 N.C. 672, 45 S.E. 564; *State v. Taylor*, 82 N.C. 554.)

In his charge to the jury, the judge fully explained the law of self-defense insofar as it related to the right of defendant to defend his person, but defendant assigns as error the court's failure to declare the law relating to his right to defend his habitation from invasion by an intruder. This assignment must be sustained. The Court, in *State v. Spruill*, 225 N.C. 356, 357-58, 34 S.E. 2d 142, 143, spoke to this precise point:

> "Defendant complains, and rightly so, that while the law arising upon the evidence given in the case in so far as it relates to his plea of self-defense was declared and explained in the charge to the jury, as it should have been, the court failed to declare and explain the law arising upon the evidence given in the case as it relates to defendant's legal right to defend his home from attack, and to evict trespassers therefrom.
>
> "The right of a person to defend his home from attack is a

substantive right, as is the right to evict trespassers from his home. . . .

"Hence, when in the trial of a criminal action charging an assault, or other kindred crime, there is evidence from which it may be inferred as in this case that the force used by defendant was in defending his home from attack by another, he is entitled to have evidence considered in the light of applicable principles of law. . . . This is true even though there be no special prayer for instruction to that effect."

The defendant is entitled to have another jury consider his case. New trial.

MOORE, J., not sitting.