STATE OF NORTH CAROLINA v. JOHN EXCELL McCOMBS, JR.

No. 779SC1017

(Filed 3 October 1978)

**Homicide § 28.1— shooting of police officer—right to defend home from invasion by intruder**

> The trial court in a prosecution for the homicide of a police officer erred in failing to instruct the jury on defendant's right to kill an intruder if he had a reasonable belief that it was necessary to kill in order to prevent the violent, forceful and unlawful entry of the intruder into his home where the uncontradicted evidence showed that six police officers, dressed in blue denim type clothing, went to defendant's home to execute a search warrant, decedent knocked on the door of the apartment, defendant looked out the window, decedent kicked in the door and entered defendant's apartment with a gun in his hand, and decedent was shot by defendant upon entering a hall in front of defendant's bedroom; there was a conflict in the evidence as to whether decedent identified himself before kicking in the door and as to whether defendant heard decedent identify himself; and defendant testified that he did not know that the supposed intruders were police officers.

APPEAL by defendant from *Baley, Judge.* Judgment entered 12 November 1976 in Superior Court, PERSON County. Heard in the Court of Appeals 5 April 1978.

Defendant was charged in four separate bills of indictment with murder; possession with intent to sell and deliver more than one ounce of marijuana; possession with intent to sell lysergic acid diethylamide; and, feloniously manufacturing marijuana. The

indictments were consolidated for trial and to each charge the defendant pled not guilty.

State's evidence tended to show that on 29 April 1976 a contingent of the vice division of the City of Durham Police Department procured a search warrant for the premises occupied by defendant and described as Apartment L-5 at 410 Pilot Street in Durham. The contingent consisting of six officers dressed in blue denim type clothing, went to the above address in two unmarked cars. Upon their arrival at the apartment, an unknown figure spotted the officers and was then seen running up the steps in the direction of defendant's apartment; his whereabouts thereafter are unknown.

Officer Larry Bullock went to the entry door of the apartment and knocked upon it. The defendant came to the window adjacent to the door and looked out at the person at the door, said nothing and dropped the curtain. Twelve to fifteen seconds later, the door was kicked open by Officer Bullock and he and the other officers entered the apartment. Officer Bullock was shot by defendant upon entering a hall in front of defendant's bedroom and died as a result of the wound.

Subsequently, the apartment was searched and various items were seized as evidence including scales, a quantity of marijuana and marijuana stems, and a vial containing lysergic acid diethylamide. Defendant later consented to a search of his automobile. Various items were seized therefrom and introduced as evidence against defendant.

Defendant's evidence tended to show that, on the night in question, after doing several errands and eating dinner, he had seated himself at his desk in his bedroom to study when, at 9:25 p.m., he heard a knock at the door of his apartment. He went to a window of the living room of the apartment, lifted the sheet on the window and looked out. He saw a black man there in a blue jeans suit; he did not recognize the man. After determining that he, defendant, did not know the stranger at the door, he was on his way to ask his roommate to see if he knew the man, when he heard banging on the door, as if whoever was on the outside was trying to break down the door. Defendant testified that he thought the man was trying to break the door to rob the apartment. As the door crashed open, defendant went quickly to his bedroom, got his gun, and went back towards the living room. As defendant reached his bedroom door, he saw the unidentified in-

dividual, whom he had seen previously knocking at the door, running down the hall with a gun. At this point, defendant raised his gun and shot. Defendant testified that he did not know that the man he shot was a police officer; that he heard no verbal expressions from anyone until he fired his gun; and that the first time he heard the word "police" was at the time immediately before he threw his gun out. Defendant further introduced evidence of his good character and reputation.

Defendant was found guilty by the jury of second degree murder, possession of marijuana with intent to distribute, possession of L.S.D. and manufacture of marijuana. From judgments imposing prison sentences, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Nonnie F. Midgette, for the State.*

*Malone, Johnson, DeJarmon & Spaulding, by C. C. Malone, Jr., for the defendant.*

MARTIN (Robert M.), Judge

Defendant contends that, while the law arising upon the evidence in the case insofar as it relates to his plea of self-defense was declared and explained in the charge, the court failed to declare and explain the law arising upon the evidence given in the case as it relates to defendant's right to defend his home from invasion by an intruder. We are compelled to agree.

The trial judge intimated in one portion of his charge that he would instruct the jury upon the defense of home, stating:

"... even though such officers be unlawfully upon the premises, if you should so find them to be, the occupants of the premises would have no right to injure or kill such officers except in self-defense *or in the protection of their home* (emphasis ours), and the court will hereafter instruct you as to what constitutes such self-defense in law."

However, the following portion of the trial judge's charge contains his only attempt to instruct the jury on the defense of home as an excuse for homicide:

"A killing would be excused entirely on the ground of self-defense, if, first, it appeared to the defendant and he believed it to be necessary to shoot Larry Bullock in order to save himself from death or great bodily harm, and second,

the circumstances as they appeared to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary firmness. If defendant reasonably believed that a murderous assault was being made upon him in his own home, he was not required to retreat but could stand his ground and use whatever force he reasonably believed to be necessary to save himself from death or great bodily harm."

While the instruction adequately sets out the law applicable to the defense by the defendant of his person, it does not adequately instruct as to the right of the defendant to protect his home from a forcible entry.

The decided cases in North Carolina have consistently distinguished between the right of a person to defend himself or other persons, and the right of a person to defend his home. The right of a person to defend his home from attack is a substantive right. *State v. Spruill,* 225 N.C. 356, 34 S.E. 2d 142 (1945). One may kill when necessary in defense of himself, his family, or his home, and he has the same right when not actually necessary, if he believes it to be so, and has a reasonable ground for the belief. *State v. Gray,* 162 N.C. 608, 77 S.E. 833 (1913).

"An attack on the house or its inmates may be resisted by taking life. The occupant of a house has a right to resist even to the death the entrance of persons attempting to force themselves into it against his will, when no action less than killing is sufficient to defend the house from entrance. A man's house, however humble, is his castle, and his castle he is entitled to protect against invasion . . ." *State v. Gray, supra* at 613; Wharton Criminal Law, 9 Ed., Vol. 1, § 503.

"The guilt or innocence of the defendant does not depend upon the presence of a pistol in the hands of the deceased, . . . but in the existence of a reasonable apprehension that he or some member of his family was about to suffer great bodily harm, *or of the reasonable belief that it was necessary to kill in order to prevent the violent and forceful entry of an intruder into his home.*" (Emphasis ours.) *State v. Gray, supra* at page 612.

The evidence shows that the police officers had deliberately clothed themselves in such a manner as to conceal their true identity from observers. There is controversy indicated by the record as to whether the defendant heard Officer Bullock identify him-

self, or whether Officer Bullock did in fact identify himself before kicking in the door to the defendant's apartment. That the door was forcibly opened and that the deceased entered the defendant's apartment with a gun in his hand is not contested. The defendant testified that he did not know that the supposed intruders were police officers. The credibility of the evidence is not for us. From this evidence it may be inferred that the force used by defendant was not only in self-defense, but in defending his home from attack by another. Whether the defendant would prevail upon this defense would depend upon the reasonableness of his belief that it was necessary to kill to prevent a violent, forceful and unlawful entry of an intruder into his home. The reasonableness of the defendant's belief is for the jury to decide. In making their determination, the jury would consider the circumstances as they are found from the evidence to have appeared to the defendant at the time of the shooting, including such relevant factors as the possession of a valid search warrant by the officers, whether the officers properly identified themselves and were refused admittance before forcing their entry, and whether the defendant knew that the intruders were police officers. Defendant was therefore entitled to have the evidence considered in the light of applicable principles of law even without a request by him. *See*, e.g., *State v. Miller*, 267 N.C. 409, 148 S.E. 2d 279 (1965); *State v. Edwards*, 28 N.C. App. 196, 220 S.E. 2d 158 (1975).

We do not deal here with the defendant's other assignments of error as they are not likely to recur at retrial. For error in the trial court's instructions to the jury, defendant is entitled to a new trial on the homicide charge.

Defendant's brief states "[a]t the outset the defendant-appellant states unto the Court that by this appeal he appeals *solely* his conviction on second-degree murder." Thus, defendant specifically abandoned his appeal as to the judgments entered in 10710, 10948, 10711, and 10947.

In 10716 (the homicide case), new trial.

In cases 10710, 10948, 10711, and 10947, no error.

Judges MORRIS and ARNOLD concur.