STATE OF NORTH CAROLINA v. WILLIE JAMES MYERS

No. 805SC418

(Filed 7 October 1980)

**Assault and Battery § 15.7– right to evict person from one's home – force permissible – instructions not required**

    In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in failing to charge the jury on defendant's right to evict the prosecuting witness from defendant's home and in failing to define the force which could have been used to accomplish such eviction, since defendant did not present any evidence that he tried to remove the victim by a "gentle laying on of hands" prior to the shooting, nor was there any evidence that the victim ever threatened or used deadly physical force upon defendant.

    APPEAL by defendant from *Bruce, Judge.* Judgment entered 15 October 1979 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 18 September 1980.

Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury and was convicted of assault with a deadly weapon inflicting serious injury. From a sentence of active imprisonment of five years, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General David Roy Blackwell, for the State.*

*Addison Hewlett, Jr., for defendant appellant.*

ERWIN, Judge.

### STATE'S EVIDENCE

At trial, a tape-recorded statement made by defendant to a law enforcement officer was introduced into evidence, which tended to show that defendant's stepson, Wilbert Clinton, was at defendant's home when an argument ensued between defendant and Clinton, because Clinton had not visited his mother while she was hospitalized. Defendant accused Clinton of being "no good" and slapped him. Clinton slapped defendant. Defendant asked Clinton several times to get out of the house. Clinton did not leave but simply stood or "dragged" around the house. Prior to the argument, Clinton had asked Annie Ruth, Clinton's fiancee, to hand him his gun; however, defendant did not believe that Clinton had a gun or was not "definite [sic] sure that he had a gun or not." Defendant stood up, went to his bedroom, got his pistol, fired a warning shot in the floor, and told Clinton to get out. Then he shot Clinton one time. Clinton's testimony of the events was substantially similar to defendant's statement except Clinton testified that he and defendant were talking, not arguing. Clinton did not testify about asking Annie Ruth for a gun. Clinton was shot in the head and was temporarily paralyzed in his right arm and legs.

### DEFENDANT'S EVIDENCE

Defendant testified that he had invited Clinton into his house; that he questioned him about not seeing his mother; that he slapped Clinton, and Clinton slapped him back; that he told Clinton to get out of his house; that he got his gun to try to make Clinton leave, because he was sick and was not man enough to throw Clinton out; that he did not know why the gun

went off the second time; and that he just wanted Clinton to leave, but did not intend to hurt him.

QUESTION PRESENTED

Did the trial court commit error in failing to charge the jury of defendant's right to evict the prosecuting witness from defendant's home and in failing to define the force that could have been used to accomplish such eviction? For the following stated reasons, we find no error in the trial of defendant.

Defendant relies on *State v. Spruill*, 225 N.C. 356, 358, 34 S.E. 2d 142, 143 (1945), wherein our Supreme Court stated:

"Hence, when in the trial of a criminal action charging an assault, or other kindred crime, there is evidence from which it may be inferred as in this case that the force used by defendant was in defending his home from attack by another, he is entitled to have evidence considered in the light of applicable principles of law. In such event, and to that end, it becomes the duty of the court to declare and explain the law arising thereon, G.S., 1-180, formerly C.S., 564, and failure of the court to so instruct the jury on such substantive feature, as in this case, is prejudicial. This is true even though there be no special prayer for instruction to that effect." (Citations omitted.)

Our research leads us to *State v. McCombs*, 297 N.C. 151, 157, 253 S.E. 2d 906, 911 (1979), where Justice Branch (now Chief Justice) stated for the Court:

"Likewise, when a trespasser invades the premises of another, the latter has the right to remove him, and the law requires that he should first request him to leave, and if he does not do so, he should lay his hands gently upon him, and if he resists, he may use sufficient force to remove him, taking care, however, to use no more force than is necessary to accomplish that object. *State v. Crook*, 133 N.C. 672, 45 S.E. 564 (1903); *State v. Taylor*, 82 N.C. 554 (1880)."

In the case *sub judice*, defendant did not present any evidence of a "gentle laying of hands" upon the victim, Clinton, prior to the shooting, nor was there any evidence that Clinton ever threatened or used deadly physical force upon defendant. Defendant testified:

"So he said, 'Annie Ruth, hand me my gun,' You know, that was before we started arguing, you know. So I said I don't believe he got no gun. I reckon, because the way it looked like to me, she didn't have no pocketbook, so I didn't definite [sic] sure that he had a gun or not. So, when I stood up and went in my room and came out I shot the floor one time and told him to get out, and he didn't run. He just dragged around, you know, just like a guy drag around, he wasn't in no hurry, so I shot the first time, and the next time I point at him. I must have shot him, and that was it."

The presence of evidence is the determinative factor of the instructions that the trial court should give. Here, the evidence did not require or suggest that the instruction complained of should have been given by the court.

In the trial of defendant, we find

No error.

Judges ARNOLD and WELLS concur.