### STATE v. R. S. NASH.

*Assault, justification in—Evidence.*

A defendant, who has reason to believe, and does believe, at the time and under the circumstances, that he is in immediate danger, is justified in resisting his assailant, though the danger did not in fact exist; but the jury must determine the reasonableness of his belief; *Therefore*, it was error to exclude from the consideration of the jury the evidence upon which such belief is grounded.

(Chief-Justice SMITH, dissenting.

(*State* v. *Scott*, 4 Ired., 409, cited and approved).

INDICTMENT for an assault and battery tried at Fall Term, 1882, of RICHMOND Superior Court, before *Gilmer, J.*

The indictment charged that the assault was committed with a deadly weapon. (See *State* v. *Nash*, 86 N. C., 650).

On the trial, Nathan Reynolds, the person on whom the assault was made, testified for the state, that on the night of the 23d of December, 1879, he and other young men of the neighborhood made up a "bell crowd" of about twenty in number, and between eight and nine o'clock that night, went around the defendant's house, ringing bells and blowing horns, and that

some of the party carried guns, and perhaps pistols, which were fired off a few times, and after they were going away from the house and had got about thirty-five yards off (but still within the defendant's enclosure, not having reached the gate), the defendant came out on his porch and fired his gun at the crowd, inflicting a serious wound on the witness by shooting into his leg eight shot (of the size of duck shot), three of which still remain therein, the others having been extracted.

The defendant was put upon the stand as a witness in his own behalf, admitted that he fired the gun at the crowd, and proposed to prove that before he fired, his child, who was sleeping near a window in the house, through which the noise of the bells and horns and firing was heard and the flash of the firing seen, rose up and ran to the witness with blood on her face (caused as he afterwards learned, but did not then know, by her running against the end of a table), and under the impulse of the moment, believing that she had been shot, he got his gun and went to the door, and, seeing the flash of pistols fired as he supposed by the retreating crowd, fired his gun at and into the crowd. This evidence was objected to by the state and excluded by the court, and the defendant excepted.

The defendant also proposed to testify that on the next day he saw some shot embedded in the plank of the house, which were not there the day before. Objected to and excluded. Defendant excepted.

The court instructed the jury that the defendant had not shown justification for the shooting. Verdict of guilty; judgment; appeal by the defendant.

*Attorney-General,* for the State.
*Messrs. Burwell, Walker & Tillett,* for the defendant.

ASHE, J. The question presented by the record is, was there error in the refusal of the judge to receive the evidence offered by the defendant. We are of the opinion there was error in

rejecting so much of the proposed testimony as tended to show, on the part of the defendant, a *reasonable ground of belief* that the trespassers upon his premises had fired into his house and wounded his child.

It may be, as testified by the prosecutor, that the band of young men, who went to the defendant's house on the night in question, only intended innocent amusement; but there is one unusual and rather extraordinary feature in the transaction, that the party intending a mere serenade, should, on such an occasion, carry guns and pistols; they are certainly very unusual instruments of music in the hands even of a calithumpian band.

They entered the enclosure, twenty in number; marched round his house, blowing horns, ringing bells and firing guns and pistols; which must have greatly frightened the family and the defendant himself, unless he is a man of more than ordinary courage. But whether awed or not by such a display of numbers and lawlessness, yielding to the dictates of prudence, he submitted to the humiliating indignity and remained within doors, until his little daughter, as he proposed to show, ran to him with her face bleeding; and believing, as was natural under the circumstances, that she had been shot, he seized his gun and went to the door, saw the flash of fire-arms, and shot into the crowd and wounded the prosecutor. We must suppose it was all the work of an instant.

Did the defendant, under these circumstances, have reasonable ground to believe that his daughter had been shot, and the assault upon him and his house was continuing? If he had, then he ought to have been acquitted.

We know this has been a much mooted question, but upon an investigation of the authorities, our conclusion is, that a reasonable belief that a felony is in the act of being committed on one, will excuse the killing of the supposed assailant, though no felony was in fact intended. And whatever will excuse homicide, will of course, excuse an assault and battery.

In *State* v. *Scott*, 4 Ired., 409, the court say: " In consulta-

tion it seemed to us at one time that the case might properly have been left to the jury, favorably to the prisoner, on the principle of *Levet's case*, Cro. Car., 538 (1 Hale, 474), which is, that if the prisoner had reasonable ground for believing that the deceased intended to kill him, and under that belief slew him, it would be excusable, or at most only manslaughter, though in truth the deceased had no such design at the time." It is to be noted that Levet was acquitted. But the court did not give the prisoner, in *Scott's case*, the benefit of the principle, for the reason that no such instruction had been asked in the court below, the court concluding that the prisoner would have requested the instruction, if he had acted upon such belief; and there were besides other circumstances. in the case, which prevented the application of the principle. But it is clearly to be deduced from the opinion of Chief-Justice RUFFIN, who spoke for the court, that in a proper case, the principle might be invoked to excuse a defendant. See also, *Patterson* v. *People*, 46 Barb., 627.

The same doctrine was enunciated by PARKER, J., afterwards Chief-Justice of the supreme court of Massachusetts, in the famous case of *Commonwealth* v. *Selfridge*, Self. Trial, 100, and the principle is thus illustrated: " A, in the peaceful pursuit of his affairs, sees B walking towards him with an outstretched arm and a pistol in his hand, and using violent menaces against his life as he advances. Having approached near enough in the same attitude, A, who has a club in his hand, strikes B over the head before or at the instant the pistol is fired, and of the wound B dies. It turned out that the pistol was in fact loaded with powder only, and that the real design of B was only to terrify A." The judge inquired: " Will any reasonable man say that A is more criminal than he would have been if there had been a ball in the pistol?" 2 Whar. Crim. Law, § 1026 (g) and note; Whar. Law of Homicide, 215, *et seq.*

But it may be objected that the defendant acted too rashly: before he resorted to the use of his gun, he should have taken the precaution to ascertain the fact whether his child had been

actually shot.   But that doctrine is inconsistent with the principle we have announced.   If the defendant had reason to believe and did believe in the danger, he had the right to act as though the danger actually existed, and was imminent.   Taking, then, the fact to be, that the trespassers had fired into defendant's house and shot his child, and the firing continued, there was no time for delay.   The occasion required prompt action.   The next shot might strike him or some other member of his family. Under these circumstances, the law would justify the defendant in firing upon his assailants in defence of himself and his family.

But, as we have said, the grounds of belief must be reasonable.   The defendant must judge, at the time, of the ground of his apprehension, and he must judge at his peril; for it is the province of the jury on the trial to determine the reasonable ground of his belief.   And here, the error is in the court's refusing to receive the proposed evidence, and submitting that question to the consideration of the jury.   A *venire de novo* must be awarded.

SMITH, C. J., *dissenting.*   I am unable to concur with the other members of the court, in the conclusion reached, that the testimony of the defendant in explanation of his conduct, if admitted and believed, would be a defence to the charge, or have any other legal effect than to mitigate his offence, and hence, as immaterial upon the issue and tending to mislead, there is no error in rejecting it.

The facts in connection with this proposed statement are summarily as follows: A boisterous and unruly crowd, in what seems to have been a frolick, enter the defendant's premises in the early night with bells, horns and fire-arms, by the noise of which, as they pass around his dwelling, himself and his family are greatly annoyed and their peace disturbed.   As they are about to leave, his little frightened daughter runs up to him with blood upon her face, caused by her striking against a table, but which he then supposed to proceed from a shot wound.   Acting upon the

impulse produced by this misconception and without stopping to make inquiry as to the cause or extent of the inquiry, he seizes his gun loaded with shot of large size, hastens to the door and out into the porch, and, seeing the flash of a gun, fires into the retreating body then near the outer gate, some thirty-five yards distant, without a word of warning or remonstrance, and wounds one of the number in the leg.

This was, in my opinion, a hasty and unauthorized act in the use of a deadly weapon, not in defence of himself or family, or premises, but the offspring of a spirit of retaliation for what he erroneously supposed to have been done, and whose error could at once have been corrected. If death had ensued, the circumstances would not have excused the homicide; and as it was not fatal, it cannot be less than an assault.

Human life is too safely guarded by law to allow it to be put in peril upon such provocation; and, however much it may palliate the defendant's impulse and the rash act in which it resulted, it cannot, in my opinion, excuse his use of a deadly instrument in so reckless a manner.

Per Curiam.                                    *Venire de novo.*