This was an indictment for murder. At the commencement of the trial, the solicitor stated that he would not ask for a verdict of murder in the first degree, but for murder in the second degree or manslaughter, as the jury might find the facts to be. The defendant admitted killing the deceased with a deadly weapon, but pleaded that the killing (609) was done in the necessary defense of himself, his family, and his habitation. *Page 503 
The defendant testified in his own behalf as follows: "My name is J. Moore Gray. I am 57 years old. I am defendant in this case. Deceased was killed at my house on the night of Saturday, 28 September. I had been at work that day at Mr. Myers' lumber shop. I went home about dark, and went to bed between 9 and 10 o'clock. My wife, my two daughters, Minnie Gray and Ethel Knight, were there. My two little girls, Belle and Lila, 5 and 7 years old, were there. Mr. William Tarlton was there, too. He had come to call on my daughter Minnie. Deceased and three other men came to my door between 11 and 12 o'clock. I have since learned that the other three men were Glenn Wolfe, Earl Helms, and John West. They came to the door and tried to get in. They began cursing and kicking at the door. Minnie came and woke me up. She said get up, that there were some men trying to break in. I got up and started to the door. I could see deceased through the glass of the front door. He was taller than the rest and had a rag tied around his head. As I stepped out into the hall, I saw the flash of a pistol and heard it shoot. Deceased shot the pistol. I could see it in his hand. I went to the door and told the men to leave. I had no gun at that time. Deceased said that he was coming in. I said go on away. He said, `Stick your old soap gourd out here, and I'll put light holes through it.' He said, `G___ d___ you, I'm coming in there after you.' He had been kicking at the door. He was out there cursing. He said, `I'm coming in at the G___ d___ window.' He ran towards the window in direction of Charlotte, and I heard glass fall. Some of my folks pushed bed against window. He said, `G___ d___ you, you have darkened that hole, but I'll come in another.' He then started towards the other window, the one towards Monroe. As he passed the front door he kicked it. I had stepped back and got my shotgun when he went to kick out the window toward Charlotte. He then went to the other window (towards Monroe) and was raising his foot to kick it out, and I threw up my gun and shot. I didn't take aim. I cracked front door open to shoot. He was cursing and raising his foot to kick out the window when I shot. (610) This was the window on the east end of porch. I had no ill feeling against deceased. I did not know him, and had never seen him before. I shot him to keep him from coming in my house and killing me. He was out there cursing and swearing that he was coming in, and was going to shoot light holes through my head if I poked it out. There were three other men with him. My little children were crying and screaming. I had ordered these men to leave a number of times. I asked them to leave before I got the gun. I was afraid they would kill me or some of my folks, or do us some bad harm. I was not mad *Page 504 
at deceased. I was fraid of him and the other men with him. I saw four men standing at the door when I got up. I could tell deceased was the man doing the cursing, for he was taller than the rest and had a rag tied around his head. Deceased was not running when I shot. He was raising his foot to kick out the window. I did not shoot deceased because I was mad. I was too scared to be mad. After I shot I went back in the front room. I loaded my gun and laid it on the bed. The other fellows ran when I shot, but I didn't know but that they would come back and try to do something to me. I have never been in court before in my life."
There was other evidence corroborating the defendant, and evidence on the part of the State contradicting him.
The defendant, among other things, requested his Honor to charge the jury as follows: "If the jury find from the evidence that the defendant shot the deceased while the deceased was manifestly intending and endeavoring, in a violent manner, to enter the habitation of defendant, for the purpose of assaulting or offering personal violence to him, or to any member of his family being therein, then the killing would be justifiable, and the jury should find the defendant not guilty." "The court charges you that when a man is in his own home and has done nothing to provoke assault, and a trespasser enters upon his premises with a high hand and attempts to force an entrance into the house in such a manner as is calculated to lead a reasonably prudent man (611) to believe that he or some member of his family is in grave danger of being killed or receiving some serious bodily harm, the law does not require such house holder to flee or to remain in his house until his assailant, is upon him, but he may open his door and shoot his assailant, if such course is apparently necessary for the protection of himself or family."
The trial judge modified this instruction by adding at the end thereof the following words: "But the jury must be the judge of the reasonableness of defendant's apprehension."
The judge also stated that the instruction as modified would be law inthis case only in the event that the jury should find that one of the menoutside was armed with a pistol. To this limitation of the rule by the judge, defendant excepted.
"The court charges you that if you find from the evidence that the deceased came with three other young men to the home of the defendant and began shooting and cursing on the porch of defendant's house, and threatened defendant, and refused to leave when ordered, and was attempting with violence to force an entrance into defendant's home, and that defendant had reasonable grounds to believe and did believe *Page 505 
that he or some member of his family was in danger of losing their lives or suffering great bodily harm at the hands of the deceased, then defendant had a right to defend his house even to the extent of taking the life of the deceased; and if you further find from the evidence that defendant shot deceased, believing from the surrounding circumstances and the conduct of deceased that it was necessary to do so to protect himself or his family, then you should find the defendant not guilty."
His honor read this instruction to the jury, but stated that it was given and should be considered by the jury only in the event that theyshould find that one of the men on the porch was armed with a pistol."If one was not armed with a pistol, you should not consider this; forthe court charges you that if one was not armed with a pistol, thereis no evidence of the use of gentle means by defendant." Defendant excepted to the limitation of rule stated in the prayer by the remark of his Honor; also to his Honor's statement at the same time that there was no evidence of the use of gentle means by defendant. (612)
The defendant was convicted of manslaughter and was sentenced to a term of three years in the State's prison, and he excepted and appealed.
If the evidence of the defendant is true, he was awakened by his daughter between 11 and 12 o'clock at night, and was told that there were some men outside trying to break in his home; he did not know the deceased; his wife and children were in the house; the deceased and three other men were outside; as the defendant went to the door the deceased fired a pistol; the deceased said he was going in the house, and threatened to shoot the defendant; he was told to leave, but persisted in his conduct; the children of the defendant were crying and screaming; the deceased had been kicking at the door and cursing the defendant, and said he was going in after him; he ran to the window and said he was going in at the G___ d___ window; he broke the glass in the window, and when some member of the family pushed a bed in front of that window, he ran to another window, and as he was raising his foot to kick it out, the defendant cracked open the door and shot.
These circumstances were substantially embodied in the instructions requested by the defendant, and he was entitled to have them given to the jury without modification. *Page 506 
The guilt or innocence of the defendant does not depend upon the presence of a pistol in the hands of the deceased, as stated by his Honor, but in the existence of a reasonable apprehension that he or some member of his family was about to suffer great bodily harm, or of the reasonable belief that it was necessary to kill in order to prevent the violent and forceful entry of an intruder into his home.
One may kill when necessary in defense of himself, his family, or his home, and he has the same right when not actually necessary, (613) if he believes it to be so, and has a reasonable ground for the belief.
The latter ground of self-defense was denied the defendant by the modification of the instruction prayed for.
Mr. Wharton, in his work on Criminal Law, 9th Ed., vol. 1, sec. 503, says: "An attack on the house or its inmates may be resisted by taking life. The occupant of a house has a right to resist even to the death the entrance of persons attempting to force themselves into it against his will, when no action less than killing is sufficient to defend the house from entrance. A man's house, however humble, is his castle, and his castle he is entitled to protect against invasion," and the same doctrine is enunciated in Bishop's New Criminal Law, vol. 1, sec. 858; Hale's Pleas of the Crown, vol. 1, sec. 458.
The facts in S. v. Nash, 88 N.C. 621, were not as strong in behalf of the defendant as the facts in this case, and yet the Court gave the defendant the benefit of the principle we have declared, and said: "If the defendant had reason to believe and did believe in the danger, he had the right to act as though the danger actually existed and was imminent."
The defendant is clearly entitled to have another jury consider his case.
New trial.
Cited: S. v. Blackwell, post, 683; S. v. Johnson, 166 N.C. 395; S. v.Pollard, 168 N.C. 121. *Page 507