STATE v. JOHN A. BUSH.

(Filed 20 December, 1922.)

1. **Homicide—Murder—Premeditation—Instructions—Prejudice—Appeal and Error.**

   Where, upon the trial of a homicide, there is evidence tending to convict the prisoner of murder in the first degree and of the less degrees of the crime, and that also would sustain his plea of self-defense, an instruction that if the prisoner, at the time, had a spite, or fancied wrong, against the deceased, it would constitute murder in the first degree, is reversible error in leaving out an essential principle of law, that though the prisoner may have had such spite or fancied wrong, premeditation or deliberation was yet necessary to constitute murder in the first degree.          ●

2. **Homicide—Murder—Self-defense—Justification—Instructions—Prejudice—Questions for Jury—Trials—Appeal and Error.**

   A person is justified in killing another when the act is committed under circumstances that would justify a man of ordinary firmness in reasonably believing that it was necessary to save his own life, or to save himself from serious bodily harm, this being for the jury to determine from the evidence and the facts and circumstances as they appeared to him at the time, and an instruction that requires the defendant to show an actual necessity for the killing is reversible error.

3. **Same—Manslaughter—Conflicting Instructions—New Trial.**

   Where, upon the trial for a homicide, the judge has deprived the prisoner of a charge upon an essential principle in the definition of manslaughter by his erroneous instruction as to the principle that would constitute murder, and the prisoner has been convicted of murder, the error will not be held as cured by a correct charge upon the same principle appearing elsewhere in his charge, the assumption on appeal being that the jury was influenced by the erroneous charge, and a new trial will be ordered.

4. **Homicide — Manslaughter — Instructions — Prejudice — Appeal and Error.**

   Where, upon a trial for a homicide, the trial judge has omitted to charge upon the defense of manslaughter separately, where there was evidence of it, and has incorrectly charged the jury upon the degrees of murder, as to what constituted manslaughter, of which there was evidence, it constitutes reversible error.

APPEAL by defendant from *Ray, J.,* at August Term, 1922, of CALDWELL.

The defendant was convicted of murder in the first degree.

The defendant John A. Bush shot the deceased, Will Cline, on the afternoon of 21 August, 1922, and Cline died at 6:30 the evening of 22 August. The State's evidence tended to show both motive and threats. The motive was a disagreement about the discharge of water from deceased's land upon that of the defendant in such way as to·

damage the land. There was also some trouble about the deceased encroaching upon the lands of the defendant.

The defendant denied this testimony of the State, and claimed that he had shot Cline (the deceased) as he, Cline, was advancing upon him with a large rock, and that he told him not to advance upon him with it; that he would shoot if he did, and that he shot in self-defense, in protection of his life, or to prevent serious bodily harm from being done him by the deceased.

There are many serious questions involved in the case, but we deem it necessary, in the view we take of it, to consider only two or three of them. There was evidence of murder in the first degree, murder in the second degree, and manslaughter, and there was also evidence that the prisoner killed the deceased in self-defense. The jury returned as their verdict "that the said John A. Bush is guilty of the felony and murder in the manner and form as charged in the bill of indictment," not otherwise finding the degree of murder.

First. The judge charged the jury as follows: "The State contends all the way through that you should convict him of murder in the first degree; that he had a real or fancied grievance against the deceased; that he prepared the weapon, brought it there with a view to kill him, and that he did that from spite and venom by reason of the deceased filling up the ditches and turning water on him. And it is the law, gentlemen, if you find he did that out of spite or revenge, either for a real or fancied wrong, he would be guilty of murder in the first degree; for if one has his rights invaded the law will afford him a peaceable remedy, but if it does not, then he must bear his lot with patience, for any killing done where one undertakes to redress his own grievance is murder *per se,* if it is done upon that ground." To this instruction of the court to the jury the prisoner duly excepted.

Second. The judge further charged the jury: "If you find that the deceased came to his death at the hands of the defendant, and that the defendant shot him under the contentions made by the State, but he did not premeditate over it, did not deliberate over it, but that he killed him with a deadly weapon, and if he has failed to satisfy you—not by the greater weight of the evidence or beyond a reasonable doubt—but failed to satisfy you that it was *necessary* for him to kill the deceased in order to save his life or protect himself against great bodily harm, then it would be your duty to return a verdict of guilty of murder in the second degree, unless he has raised in your minds a reasonable doubt about it." And to this instruction of the court to the jury, the prisoner duly excepted.

Judgment upon the verdict, and the prisoner appealed.

STATE *v.* BUSH.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Mark Squires, W. C. Newland, J. H. Burke, and W. F. Scholl for defendant.*

WALKER, J., after stating the case: We are of the opinion that both instructions were defective, and that the error in them was material and prejudicial.

The first of the above instructions was erroneous, because it entirely omitted any reference to the element of premeditation and deliberation, and this was done twice in the instruction, for one may kill another "because of spite, or because of a real or a fancied wrong," without having premeditated or deliberated about it, or having formed any definite purpose or intent to kill his enemy, and yet the instruction would warrant a conviction of murder in the first degree, even though the jury should find only that the prisoner had slain the deceased because of spite or a supposed wrong, but without premeditation or deliberation, and even though, in fact, there was no premeditation or deliberation, or they believed or had found that there was none. The fact that the prisoner killed from spite, or even revenge, does not conclusively establish that he did so after premeditation and deliberation, which is to be found by the jury as a fact, before they can convict of the capital felony, and mere malice is not sufficient. *S. v. Ta-cha-na-tah,* 64 N. C., 614; *S. v. Pollard,* 168 N. C., 116.

But the second of the instructions is subject to two valid objections. The first is, that it requires the prisoner to satisfy the jury "that it was *necessary* for him to kill the deceased in order to save his own life, or to protect himself against great bodily harm." Whereas, it was not essential that the prisoner should have satisfied the jury of the actual necessity for killing the deceased before his plea of self-defense can avail him. If the prisoner had a reasonable apprehension, based upon the facts and circumstances, as they appeared to him at the time he committed the homicide, that he would be killed or suffer great bodily harm, unless he took the life of the deceased, he could stand upon his right of self-defense, provided he was not in such fault himself as would deprive him of the principle, and this was for the jury to determine under proper instructions from the court, there being evidence that he was not in such default. *S. v. Barrett,* 132 N. C., 1005; *S. v. Scott,* 26 N. C., 409; *S. v. Nash,* 88 N. C., 618; *Comrs. v. Selfridge,* Herrigan & Thompson's Cases on Self-defense, p. 1. We said in *S. v. Barrett, supra,* at p. 1007: "In some of the early cases expressions may be found which would seem to indicate that a case of self-defense is not made out unless the defendant can satisfy the jury that he killed the

deceased from necessity, but we think the most humane doctrine, and the one which commends itself to us as being more in accordance with the enlightened principles of the law, is to be found in the more recent decisions of this Court. It is better to hold, as we believe, that the defendant's conduct must be judged by the facts and circumstances as they appeared to him at the time he committed the act, and it should be ascertained by the jury, under the evidence and proper instructions of the court, whether he had a reasonable apprehension that he was about to lose his life or to receive enormous bodily harm. The reasonableness of his apprehension must always be for the jury, and not the defendant, to pass upon, but the jury must form their conclusion from the facts and circumstances as they appeared to the defendant at the time he committed the alleged criminal act. If his adversary does anything which is calculated to excite in his mind, while in the exercise of ordinary firmness, a reasonable apprehension that he is about to assail him and to take his life or to inflict great bodily harm, it would seem that the law should permit him to act in obedience to the natural impulse of self-preservation and to defend himself against what he supposes to be a threatened attack, even though it may turn out afterwards that he was mistaken, provided always, as we have said, the jury find that his apprehension was a reasonable one, and that he acted with ordinary firmness. We think the foregoing principle has been clearly stated and adopted by this Court in several cases." In *S. v. Scott,* 26 N. C., 409; 42 Am. Dec., 148, this Court says: "In consultation it seemed to us at one time that the case might have been left to the jury favorably to the prisoner on the principle of *Level's case,* Cro. Car., 538 (1 Hale, 474), which is, if the prisoner had reasonable grounds for believing that the deceased intended to kill him, and under that belief slew him, it would be excusable, or, at most, manslaughter, though in truth the deceased had no such design at the time." And in *S. v. Nash,* 88 N. C., 618, the Court cites and approves the passage just quoted from *S. v. Scott, supra,* and then makes the following extract from *Com. v. Selfridge, supra:* "A., in the peaceful pursuit of his affairs, sees B. walking towards him with an outstretched arm and a pistol in his hand, and using violent menaces against his life as he advances. Having approached near enough in the same attitude, A., who has a club in his hand, strikes B. over the head before or at the instant the pistol is fired, and of the wound B. dies. It turned out, in fact, that the pistol was loaded with powder only, and that the real design of B. was only to terrify A." The judge inquired, "Will any reasonable man say that A. is more criminal than he would have been if there had been a ball in the pistol?" 2 Whar. Cr. Law, sec. 1026 (*g*), and note; Wharton Law of Homicide, 215 *et seq.* In *S. v. Nash,* 88 N. C., 618, the Court further says: "But it may be

objected that the defendant acted too rashly; before he resorted to the use of his gun, he should have taken the precaution to ascertain the fact whether his child had been actually shot. But that doctrine is inconsistent with the principles we have announced. If the defendant had reason to believe, and did believe, in the danger, he had the right to act as though the danger actually existed and was imminent. Taking, then, the fact to be that the trespassers had fired into defendant's house and shot his child, and the firing continued, there was no time for delay. The case required prompt action. The next shot might strike himself or some other member of his family. Under these circumstances the law would justify the defendant in firing upon his assailants in defense of himself and his family. But, as we have said, the grounds of belief must be reasonable. The defendant must judge at the time of the ground of his apprehension, and he must judge at his peril; for it is the province of the jury on the trial to determine the reasonable ground of his belief. And here the error is in the court's refusing to receive the proposed evidence and submitting that question to the consideration of the jury."

In *S. v. Matthews,* 78 N. C., 534, this Court quotes with approval Foster's Crown Law, as follows: "It is stated in all of the authorities, and cannot be doubted, that if a man who is assailed believes, and has reason to believe, that although his assailant may not intend to take his life, yet he does intend and is about to do him some enormous bodily harm, such as maim, for example, and under this reasonable belief he kills his assailant, it is homicide *se defendo,* and excusable. It will suffice if the assault is felonious."

It is further said in *Barrett's case,* 132 N. C., at p. 1010: "The prisoner requested the court to charge the jury in accordance with this reasonable principle, and the court had given the special instructions, but in the general charge it changed the same materially by omitting therefrom the most important portion, and requiring the prisoner to satisfy the jury that there was, at the time he fired the pistol, an actual necessity for killing the deceased. The jury, therefore, was left in doubt and uncertainty as to what was the true rule of law by which they should be guided in passing upon the prisoner's plea of self-defense, and the last instruction, which we may assume made the greater impression upon the jury, called for more proof from the prisoner than the law required of him. He was, therefore, placed at a disadvantage, and consequently embarrassed and prejudiced in his defense. There is a marked difference between an actual necessity for killing and that reasonable apprehension of losing life or receiving great bodily harm, which the law requires of the prisoner in order to excuse the killing of

his adversary, and it was just this difference that may have caused the jury to decide against the prisoner upon this most important issue in the case."

If there was an instruction given corresponding with this principle, which has often been approved by this Court, the instruction now being considered was certainly at variance with it, and in such a case the law is well established and well defined that when there are conflicting instructions upon a material point, a new trial must be granted, as the jury are not supposed to be able to determine when the judge states the law correctly or when incorrectly. We must assume, in passing upon the motion for a new trial, that the jury was influenced in coming to a verdict by that portion of the charge which was erroneous. *S. v. Barrett, supra; Edwards v. R. R.,* 132 N. C., 99; *Williams v. Haid,* 118 N. C., 481; *Tillett v. R. R.,* 115 N. C., 663.

The other objection to the instruction is that, by it, the learned judge virtually excluded from the consideration of the jury the question of manslaughter, and the evidence relating thereto. It will be clearly seen that the judge here submitted only two questions, as to murder in the first degree and murder in the second degree, by charging that if the prisoner did not premeditate or deliberate over it, and had not satisfied the jury that he killed from necessity, they would convict him of murder in the second degree, if he used a deadly weapon, thereby excluding from the consideration of the jury the element of manslaughter, there being some evidence of it.

There was a question raised as to the form of the verdict, but in the view we have taken of the case it is unnecessary to pass upon it, as it may not again be presented to us. We therefore forbear any discussion of it or the other exceptions.

There was error in the respects we have indicated, for which there must be another trial, and it is so ordered.

New trial.