## STATE v. HENRY MOSLEY.

### (Filed 23 March, 1938.)

**1. Homicide § 16—**

When an intentional killing of a human being with a deadly weapon is admitted or established, the law implies malice, constituting the offense murder in the second degree, with the burden on defendant to show to the satisfaction of the jury matters in mitigation or excuse.

**2. Homicide § 11—**

When a person is without fault in bringing on an affray, and a murderous assault is made upon him, he is not required to retreat, but may stand his ground and kill his adversary if necessary in his self-defense.

**3. Same—Right to kill in self-defense rests upon necessity, real or apparent.**

One may kill in self-defense if he is without fault in bringing on the affray, and it is necessary or appears to him to be necessary to kill his adversary to save himself from death or great bodily harm, the reasonableness of his apprehension being for the jury to determine from the circumstances as they appeared to him.

**4. Homicide §§ 7, 11—**

If excessive force or unnecessary violence is used in self-defense, defendant is guilty of manslaughter at least.

**5. Homicide § 11—**

Mere language is not sufficient to support the plea of self-defense, but it is required that defendant be put in fear of death or great bodily harm by an actual or threatened assault.

**6. Homicide §§ 11, 27f—Fear either of death or great bodily harm will justify killing in self-defense.**

In this prosecution for homicide, the court instructed the jury that defendant would be justified in killing his adversary if defendant believed, and had reasonable grounds to believe, that the act was necessary to save himself from death. *Held:* The instruction must be held for error as failing to include, as a basis of the plea of self-defense, reasonable apprehension of great bodily harm, even though the court elsewhere correctly charged the jury on the question, since it cannot be ascertained which instruction the jury followed in arriving at its verdict.

**7. Criminal Law §§ 53g, 81c—**

 An erroneous instruction on a substantive feature of the case constitutes prejudicial error even though correct instructions on the point are elsewhere given in the charge, since it must be presumed on appeal that the jury were influenced by the erroneous portion in arriving at its verdict.

BARNHILL, J., dissents.

APPEAL by defendant from *Harding, J.,* at May Term, 1937, of FORSYTH.

Criminal prosecution tried upon indictment charging defendant with the murder of one Clarence Black.

The defendant pleaded not guilty, and relies upon self-defense.

The State offered evidence tending to show that: On the afternoon of Easter Monday, 1937, the defendant shot one Clarence Black with a pistol, inflicting a wound from which he died almost instantly. The scene of the shooting was on the north sidewalk of 8th Street, between Ridge Street on the west and Highland Avenue on the east, in front of a beer parlor in Winston-Salem. Defendant, on returning from Greenville, S. C., near midnight on Sunday found Clarence Black in defendant's home with his wife. Black came out the front door, passing defendant, and left. Between 8 and 9 o'clock the next morning defendant went to the home of Mary Perkins on E. 8th Street, where he was accustomed to visit. While there, in conversation with Robert Martin, he said that he was worried, that when he came home the night before Clarence Black came out and ran; that on being asked what he was going to do about it, defendant said, "I don't know what I might do"; that on being advised to "just give it up and not do anything about it," he said, "That is true. I am going to see him and have a talk to him. If he talks like a man I ain't going to do anything. If he talks to me like junk I am going to kill him." Then in the afternoon, between 3 and 4 o'clock, Clarence Black and four others were standing in front of the beer parlor, the scene of the shooting, two next to the building and Black and two others at edge of sidewalk. Defendant came from Highland Avenue on to and walked west down 8th Street in "a slow gait with his head kind of down," his hands in his front pocket, an overcoat thrown around his shoulders and his body coat buttoned up." Defendant walked between the two groups and asked to speak to Clarence Black. They took two or three steps to the west and engaged in a conversation in a low tone, about Black going to defendant's house. Shurley Brown, only eyewitness for the State, detailed that part of conversation he says he heard. His testimony differs from statement of defendant, hereinafter referred to, mainly in that he says that immediately before the shooting, defendant cursed Black, and said, "You boys get out of the way," and that at that time Black was standing with his right hand in his front pocket and a cigarette in his left.

R. N. Carroll, police officer, testified for the State that defendant came into police headquarters Easter Monday night and gave up. At that time he made a statement to the officer which was reduced to writing and signed. The officer testified that defendant said in substance: After describing the incident at his home on Sunday night, the defendant said that he saw Clarence Black the next afternoon about 3 o'clock at the beer parlor on E. 8th Street, near A. Ridge Alley; that he had his pistol in his pants pocket when he saw him; that he called to Black and told him he wanted to talk to him. They stepped off 10 or 12 feet from the beer parlor; that he asked Black why he didn't leave his wife alone; that Black told him he had not been bothering his wife; that then Black cursed him, using a vilely vulgar epithet; that Black put his hand in his bosom; that he shot him twice at a distance of 10 feet, and he fell. The written statement was introduced in corroboration. In it defendant stated: "I then asked him why he kept messing with my old lady. He then went to cursing me and called me a — — — and several other names, and said that he did not go with my old lady. Clarence then commenced to back off with his hand in his bosom. I had my pistol in my right pants pocket and my hand on it. I pulled my pistol when he was about 10 feet away. I shot him twice and he fell." Defendant offered no evidence.

Verdict: Guilty. Case remanded at Fall Term, 1937, for correction of record to speak the truth as to verdict. 212 N. C., 766, 194 S. E., 486. Correction made to read: "Guilty of murder in the first degree."

Judgment: Death by asphyxiation.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*Phin Horton, Jr., John C. Wallace, and Richmond Rucker for defendant appellant.*

WINBORNE, J. The court below was of opinion that the evidence was sufficient to justify and to require submitting to the jury defendant's plea of self-defense. With this we agree. However, exceptions to the charge of the court with respect thereto reveals prejudicial error.

The intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree. When the implication is raised by an admission or proof of the fact of killing, the burden is on the defendant to show to the satisfaction of the jury facts and circumstances sufficient to reduce the homicide to manslaughter or to excuse it. *S. v. Robinson, ante,* 273, and cases cited.

"Where a man is without fault, and a murderous assault is made upon him, an assault with intent to kill, he is not required to retreat,

but may stand his ground, and if he kill his assailant and it is necessary to do so to save his own life or protect his person from great bodily harm, it is excusable homicide and will be so held." *Hoke, J.,* in *S. v. Blevins,* 138 N. C., 668, 50 S. E., 763; *S. v. Robinson, ante,* 273, and cases cited.

The plea of self-defense or excusable homicide rests upon necessity, real or apparent. In *S. v. Marshall,* 208 N. C., 127, 179 S. E., 427, the principle is clearly stated: "The decisions are to this effect:

"1. That one may kill in defense of himself or his family when necessary to prevent death or great bodily harm. *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143; *S. v. Bost,* 192 N. C., 1, 133 S. E., 176; *S. v. Johnson,* 166 N. C., 392, 81 S. E., 941; *S. v. Gray,* 162 N. C., 608, 77 S. E., 833.

"2. That one may kill in defense of himself or his family when not actually necessary to prevent death or great bodily harm, if he believes it to be necessary and has a reasonable ground for the belief. *S. v. Barrett,* 132 N. C., 1005, 43 S. E., 832.

"3. That the reasonableness of this belief or apprehension must be judged by the facts and circumstances as they appeared to the party charged at the time of the killing. *S. v. Blackwell,* 162 N. C., 672, 78 S. E., 316.

"4. That the jury and not the party charged is to determine the reasonableness of the belief or apprehension upon which he acted. *S. v. Nash,* 88 N. C., 618."

In *S. v. Cox,* 153 N. C., 638, 69 S. E., 419, it is said: "In order to make good the plea of self-defense the force used must be exerted in good faith to prevent the threatened injury, and must not be excessive or disproportionate to the force it is intended to repel, but the question of excessive force was to be determined by the jury." *S. v. Robinson,* 188 N. C., 785, 125 S. E., 617; *S. v. Terrell,* 212 N. C., 145, 193 S. E., 161.

If excessive force or unnecessary violence be used the defendant would be guilty of manslaughter at least. *S. v. Glenn,* 198 N. C., 80, 150 S. E., 663.

"The legal provocation which will reduce murder in the second degree must be more than words, as language, however abusive, neither excuses nor mitigates the killing, and the law does not recognize circumstances as a legal provocation which in themselves do not amount to an actual or threatened assault." *S. v. Benson,* 183 N. C., 795, 111 S. E., 869.

In *S. v. Barrett,* 132 N. C., 1007, 43 S. E., 832, *Walker, J.,* speaking to the question, said: "The defendant's conduct must be judged by the facts and circumstances as they appeared to him at the time he committed the act, and it should be ascertained by the jury, under evidence

and proper instructions of the court, whether he had a reasonable apprehension that he was about to lose his life or to receive enormous bodily harm. The reasonableness of his apprehension must always be for the jury, and not the defendant, to pass upon, but the jury must form its conclusion from the facts and circumstances as they appeared to the defendant at the time he committed the alleged criminal act. If his adversary does anything which is calculated to excite in his mind, while in the exercise of ordinary firmness, a reasonable apprehension that he is about to assault him and to take his life or to inflict great bodily harm, it would seem that the law should permit him to act in obedience to the natural impulse of self-preservation and to defend himself against what he supposes to be a threatened attack, even though it turns out afterwards that he was mistaken: *Provided, always,* the jury finds that his apprehension was a reasonable one and that he acted with ordinary firmness." *S. v. Waldroop,* 193 N. C., 12, 135 S. E., 165; *S. v. Terrell, supra.*

Applying these principles, exception is well taken to that portion of the charge which reads: "I might meet a man out here on the street and he says, 'Throw up your hands; I am going to kill you.' I think he is and believe it. He points a pistol in my face and tells me he is going to kill me, and I shoot him first. It may be he was not going to kill me; that he was playing a joke on me; just trying to have a little fun, and there was no danger at all. If I had reasonable grounds to believe that I was in danger, about to be killed and in good faith believing I was, I have the right to use reasonable force to protect myself. On the other hand, a man meets me on the street and tells me to throw up my hands, he is going to kill me and he meant to do so. I was in actual danger of being killed instantly. If I did not believe it and thought he was joking or playing with me and did not believe it, but because he had thrown a pistol on me on the street in the presence of my acquaintances and made me mad and I flew into a temper and knocked him down and killed him, then I would be guilty at least of manslaughter, because I did not believe I was going to be killed. A *man must in good faith believe he is going to be killed* (italics ours); then he has the right to use such force as he believes to be necessary to protect himself."

A similar charge was considered in *S. v. Waldroop, supra.* What is said there is applicable here. There, as here, the right of self-defense was made to depend entirely upon a reasonable belief that defendant was about to be killed. Here it is specifically declared: "A man must in good faith believe he is going to be killed; then he has the right to use such force as he believes to be necessary to protect himself." The error in the instruction is the omission of any reference to *the apprehension of great bodily harm.* This is as much an element of defense

*as the apprehension of death.* The test is, *did the defendant have reasonable apprehension to believe,* and *did he believe, that his life was in danger* or *that he was about to receive great bodily harm?*

As in the *Waldroop case,* here there appears in other portions of the charge a correct statement of the principle of law. *Adams, J.,* speaking to the question, there said: "In substance the two are contradictory—one including both elements and the other only one. 'It is well settled that when there are conflicting instructions upon a material point a new trial must be granted, as the jury are not supposed to be able to determine when the judge states the law correctly or when incorrectly. We must assume in passing upon motion for new trial that the jury were influenced in coming to a verdict by that portion of the charge which is erroneous.' *Edwards v. R. R.,* 132 N. C., 99; *S. v. Barrett, supra."*

For error in the charge as indicated there will be a
New trial.

BARNHILL, J., dissents.