STATE v. WILLIAM ELLERBE, ALIAS JAMES INGRAM.

(Filed 12 January, 1944.)

**1. Homicide § 11—**

One may kill in defense of himself or his family when it is not actually necessary to prevent death or great bodily harm, if he believes it necessary and has reasonable ground for such belief. The reasonableness of the belief or apprehension of defendant must be judged by the jury, from the facts and circumstances as they appeared to defendant at the time of the killing.

**2. Same—**

In an assault without felonious intent, the person assaulted may not stand his ground and kill his adversary if there is any way of escape open to him, though he is allowed to repel force by force and give blow for blow; while, in an assault with felonious intent, the person assaulted is under no obligation to fly, but may stand his ground and kill his adversary, if need be.

**3. Criminal Law § 53a—**

An erroneous instruction upon a material aspect of a criminal case is not cured by the fact that in other portions of the charge the law is cor-

rectly stated. It is impossible to determine on which of the instructions the jury acted.

**4. Homicide § 27f—**

Upon a plea of self-defense in a homicide case, the court's instruction to the jury, that the defendant must show that he was free from blame and that the assault or threatened assault was made upon him with a felonious purpose and that he took the life of the person who threatened to assault him, or the person that he had reasonable ground to believe was threatening to assault him, only when it was necessary to save himself from death or great bodily harm, is error.

BARNHILL, J., dissenting.

APPEAL by defendant from *Armstrong, J.,* at April Term, 1943, of RICHMOND.

Criminal prosecution tried upon indictment charging the defendant with the murder of Otis Leak.

Verdict: Guilty of manslaughter. Judgment: Imprisonment in the State's Prison for a term of not less than seven nor more than fifteen years.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*
*Jones & Jones for defendant.*

DENNY, J. This defendant was at the home of Martha Josephs on the night of 6 January, 1933. Otis Leak had been there and had left to get someone to take him and the defendant on a trip. Leak requested the defendant to remain there until he returned. While the defendant was waiting for Leak's return, Jesse Rogers came up "and appeared like he was drunk." A quarrel ensued and the defendant testified that Rogers said when he left, "That is all right, I will get you, I am going off and will come back and get you." In this he is corroborated by the State's evidence. The defendant left and hunted for Otis Leak but failed to find him. He thereupon returned to the home of Martha Josephs, where he had slept the night before. Martha's house contained two front rooms and a back-shed, which was used as a kitchen. Just prior to the shooting, the defendant and Martha were sitting by the fire in the front room of the house, which room adjoined the kitchen. This room and the kitchen were connected by a "middle door." The defendant was sitting with his back to this door. Martha heard someone in the kitchen and said, "Will, there is somebody in the room." Defendant testified: "I got up and took my pistol out of my pocket, I was right against the door and I could hear him scratching against the door trying to find the knob in

the dark, and Martha spoke and said, 'Who is that?' and nobody said nothing, and I hollered loud enough to hear me might near a block because I was scared and I said, 'Who in the hell is that?' and wouldn't nobody say nothing whatever, and I said 'Whomsoever you is go outside, you come in here and I am going to shoot you,' and about that time he found the knob and began pulling the door open and I reckon he must have cracked it that much (witness measures with hands). And that is when I shot twice through the door. I thought it was Jesse Rogers at the door because he wouldn't answer and I shot because I was scared, I was afraid I would get shot; I was looking for Jesse to come back and kill me as he said he would; I was afraid of Jesse and lots of people in town was; his character was bad for being violent and dangerous."

This evidence appears to be sufficient to entitle the defendant to have his plea of self-defense considered by the jury. S. v. Kimbrell, 151 N. C., 702, 66 S. E., 614; S. v. Johnson, 166 N. C., 392, 81 S. E., 941. Therefore, it becomes necessary for us to consider the defendant's third exception, which was entered to the following portion of his Honor's charge: "Gentlemen of the jury, the Court instructs you that where a person is without fault and a murderous assault is made upon him, that is, I mean with intent to kill, he is not required to retreat but he may stand his ground and if he kills his assailant and it is necessary to do so in order to save his own life or to protect himself from great bodily harm, it would be excusable homicide and this would be true whether the necessity for the killing be either real or apparent. This is, however, the Court instructs you, to be determined by the jury from the facts as they find them to be from the evidence as they reasonably appeared to the defendant at the time of the alleged killing, and in order, the Court instructs you, to have the benefit of this principle of law the defendant must show that he was free from blame in the matter and that the assault or threatened assault was made upon him with a felonious purpose, and that he took the life of the person who was threatening to assault him or the person that he has reasonable ground to believe was threatening to assault him, only when it was necessary to save himself from death or from great bodily harm."

The exception is well taken and must be sustained. It is apparent the instruction complained of was the result of an inadvertence on the part of the able trial judge. However, after properly charging the law on the plea of self-defense, the court instructed the jury that in order to have the benefit of this principle of law, "the defendant must show that he was free from blame in the matter, and that the assault or threatened assault was made upon him with a felonious purpose, and that he took the life of the person who was threatening to assault him, or the person that he has reasonable ground to believe was threatening to assault him,

only when it was necessary to save himself from death or great bodily harm."

We think the instruction, in the light of the facts and circumstances set forth in this record, is objectionable in two respects. In the first place, the defendant cannot show that the assault or threatened assault was made upon him with a felonious purpose. At most, he can only show that he believed a felonious assault was about to be made upon him. In the second place, he cannot show that it was necessary to kill his supposed assailant to save himself from death or great bodily harm, for he killed Otis Leak, his friend, under the misapprehension that Leak was Jesse Rogers. Therefore, in no event can he show more than that he took the life of the person that he had reasonable ground to believe was about to commit a felonious assault upon him, when it appeared to him to be necessary to save himself from death or great bodily harm.

One may kill in defense of himself when it is not actually necessary to prevent death or great bodily harm, if he believes it to be necessary and has a reasonable ground for such belief. *S. v. Barrett,* 132 N. C., 1005, 43 S. E., 832, in which case the Court said: "There is a marked difference between an actual necessity for killing and that reasonable apprehension of losing life or receiving great bodily harm, which is all that the law requires of the prisoner in order to excuse the killing of his adversary, and it was just this difference that may have caused the jury to decide against the prisoner upon this most important issue in the case."

The distinction referred to above constitutes the crucial point involved on this appeal. *S. v. Terrell,* 212 N. C., 145, 193 S. E., 161; *S. v. Holland,* 193 N. C., 713, 138 S. E., 8; *S. v. Bush,* 184 N. C., 778, 114 S. E., 831; *S. v. Johnson,* 184 N. C., 637, 113 S. E., 617.

In the case of *S. v. Nash,* 88 N. C., 618, the defendant "proposed to prove that before he fired, his child, who was sleeping near a window in the house, through which the noise of the bells and horns and firing was heard and the flash of the firing seen, rose up and ran to the witness with blood on her face (caused as he afterwards learned, but did not then know, by her running against the end of a table), and under the impulse of the moment, believing that she had been shot, he got his gun and went to the door, and, seeing the flash of pistols fired as he supposed by the retreating crowd, fired his gun at and into the crowd." The trial court excluded the evidence and the defendant excepted and appealed. In sustaining the exception, this Court said: "We know this has been a much mooted question, but upon an investigation of the authorities, our conclusion is, that a reasonable belief that a felony is in the act of being committed on one, will excuse the killing of the supposed assailant, though no felony was in fact intended. . . . But it may be objected that the defendant acted too rashly; before he resorted to the use of his gun, he should have taken the precaution to ascertain the fact whether his

child had been actually shot. But the doctrine is inconsistent with the principle we have announced. If the defendant had reason to believe and did believe in the danger, he had the right to act as though the danger actually existed, and was imminent. Taking, then, the fact to be, that the trespassers had fired into defendant's house and shot his child, and the firing continued, there was no time for delay. The occasion required prompt action. The next shot might strike him or some other member of his family. Under these circumstances, the law would justify the defendant in firing upon his assailants in defense of himself and his family. But, as we have said, the grounds of belief must be reasonable. The defendant must judge, at the time, of the ground of his apprehension, and he must judge at his peril; for it is the province of the jury on the trial to determine the reasonable ground of his belief."

The reasonableness of the belief or apprehension of the defendant must be judged by the facts and circumstances as they appeared to him at the time of the killing. *S. v. Blackwell,* 162 N. C., 683, 78 S. E., 316, but the jury and not the defendant is to determine the reasonableness of the belief or apprehension upon which he acted, *S. v. Nash, supra; S. v. Kimbrell, supra; S. v. Gray,* 162 N. C., 608, 77 S. E., 833; *S. v. Johnson, supra; S. v. Holland, supra; S. v. Glenn,* 198 N. C., 79, 130 S. E., 663; *S. v. Terrell, supra; S. v. Robinson,* 213 N. C., 273, 195 S. E., 824; *S. v. Bryant,* 213 N. C., 752, 197 S. E., 530; *S. v. Anderson,* 222 N. C., 148, 22 S. E. (2d), 271.

Quoting further from *S. v. Barrett, supra,* the Court said : "In some of the early cases expressions may be found which would seem to indicate that a case of self-defense is not made out unless the defendant can satisfy the jury that he killed the deceased from necessity, but we think the most humane doctrine and the one which commands itself to us as being more in accordance with the enlightened principles of the law is to be found in the more recent decisions of this Court. It is better to hold, as we believe, that the defendant's conduct must be judged by the facts and circumstances as they appeared to him at the time he committed the act, and it should be ascertained by the jury, under the evidence and proper instructions of the court, whether he had a reasonable apprehension that he was about to lose his life or to receive enormous bodily harm. The reasonableness of his apprehension must always be for the jury, and not the defendant, to pass upon, but the jury must form their conclusion from the facts and circumstances as they appeared to the defendant at the time he committed the alleged criminal act. If his adversary does anything which is calculated to excite in his mind, while in the exercise of ordinary firmness, a reasonable apprehension that he is about to assail him and take his life or to inflict great bodily harm, it would seem that the law should permit him to act in obedience to the natural impulse of self-preservation and to defend himself against what

STATE *v.* ELLERBE.

he supposed to be a threatened attack, even though it may turn out afterwards that he was mistaken, provided always as we have said, the jury find that his apprehension was a reasonable one and that he acted with ordinary firmness."

It is well to keep in mind the distinction between assaults with felo-. nious intent and assaults without such intent when considering the plea of self-defense, as pointed out in the case of *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663, where *Stacy, C. J.,* speaking for the Court, said : "There is a distinction made by the text-writers on criminal law, which seems to be reasonable and supported by authority, between assaults with felonious intent and assaults without such intent. 'In the latter, the person assaulted may not stand his ground and kill his adversary if there is any way of escape open to him, though he is allowed to repel force by force and give blow for blow. In the former class, where the attack is made with murderous intent, the person attacked is under no obligation to fly, but may stand his ground and kill his adversary, if need be.' 2 Bishop's Criminal Law, sec. 6333, and cases cited." *S. v. Elmore,* 212 N. C., 531, 193 S. E., 713 ; *S. v. Mosley,* 213 N. C., 304, 195 S. E., 830 ; *S. v. Bryant, supra; S. v. Roddey,* 219 N. C., 532, 14 S. E. (2d), 526.

It is contended on behalf of the State that, taking the charge contextually, there is no prejudicial error. We cannot so hold. An erroneous instruction upon a material aspect of the case is not cured by the fact that in other portions of the charge the law is correctly stated. This is especially applicable in the instant case, because the jury was instructed that, in order for the defendant to have the benefit of the principle of law, that is of self-defense, he must show certain things, some of which he was not required to show under the facts and circumstances disclosed on this record, in order to have the jury consider his evidence on the plea of self-defense. It is impossible to determine on which of the instructions the jury acted. *S. v. Isley,* 221 N. C., 213, 19 S. E. (2d), 875 ; *S. v. Floyd,* 220 N. C., 530, 17 S. E. (2d), 658 ; *S. v. Starnes,* 220 N. C., 384, 17 S. E. (2d), 346 ; *S. v. Mosley, supra; S. v. Johnson* (184 N. C., 637), *supra.*

We deem it unnecessary to discuss the other exceptions.

For the reasons stated, the defendant is entitled to a

New trial.

BARNHILL, J., dissenting : In my opinion, when the charge is considered contextually, no harmful error appears.

The court repeatedly charged that the necessity upon which the right of self-defense rests may be either real or apparent. It is so stated in the excerpt quoted in the majority opinion.

Likewise, it charged that "where a person thinks" he is about to be assaulted and he has reasonable grounds to believe that he is about to suffer death or great bodily harm he has the right to defend himself, even to the extent of taking human life. This was repeated more than once.

But I need not elaborate upon this phase of the case, for, in my opinion, there is a stronger reason why we should conclude that the error in the quoted excerpt is harmless.

There is no evidence of a felonious assault or threatened assault. At most defendant can only show that he believed a felonious assault was about to be made upon him. So concludes the majority opinion.

There is not a particle of evidence which should cause a person, in the exercise of ordinary firmness, to apprehend that it was more dangerous to retreat than to stand his ground and repel the anticipated attack. The defendant merely pyramided his fears—none of which were well founded. He thought it was Jesse Rogers; he thought he was armed and looking for trouble; he thought he was about to make a felonious assault upon him.

Defendant was not in his own home. He was in one room, and his imaginary assailant was in the adjoining room. He had ample opportunity to retreat. I submit, then, that on the facts in this case it was the duty of defendant to retreat and avoid the difficulty he apprehended was about to occur. Being armed for combat, he elected instead to stand his ground and shoot when no occasion for shooting in his own defense had arisen. To my mind there is no other conclusion to be drawn from the evidence. Hence, the submission of the issue to the jury was more favorable to him than he had any right to demand, and any error in the charge in that respect is harmless.

The law of self-defense is not fashioned to suit the needs of the person who is armed and looking for trouble. Nor does it protect the cowardly or unusually apprehensive person. It should not avail the defendant here.

In the final analysis this is just a case where too many men were attempting to visit the same woman at the same time. Defendant was the first on the ground and apparently the favored one. He caused the first interloper to leave, and he shot the second. He should pay the penalty of the law.

I vote to affirm.