**Sydney EVANS, Jr., Plaintiff,**

v.

**Hubert HUGHES and Cecil's Inc., Defendant.**

**No. 248.**

United States District Court
M. D. North Carolina, Durham Division.
Nov. 14, 1955.

M. Hugh Thompson, Durham, N. C., F. B. McKessick, Durham, N. C., for plaintiff.

Brooks, McLendom, Brim & Holderness, Greensboro, N. C., for defendants.

HAYES, District Judge.

The plaintiff commenced an action in the Superior Court of Durham County against Hubert Hughes and Cecil's Inc. to recover damages as a result of severe and permanent injuries sustained when he was shot by the defendant Hughes. The summons was not served on the defendant Hughes but was served on the defendant Cecil's Inc. Hughes and the corporate defendant were citizens of South Carolina and the plaintiff was a citizen of Durham, N. C. On petition of Cecil's Inc. the action was removed to the federal court on the ground that there was a controversy between citizens of different states and the amount in controversy exceeded $3000, exclusive of interest.

The defendant, Cecil's Inc. was engaged as a general contractor in the construction of a large Negro housing project known as McDougald Terrace on a tract of land covering approximately 19 acres which had been previously subdivided into avenues, streets, alleys and lots and lying on the Eastern outskirts of the City of Durham and adjacent to but East of North Carolina College.

Hughes was an employee of Cecil's Inc. having come there from South Carolina when the project was started and having worked for some time as a carpenter. He brought the trailer that belonged to him and his wife and parked it on one of the lots North of Braswell Street and East of Ridgeway Street or Avenue. He and his wife and eleven year old daughter lived in the trailer. None of the other employees of Cecil's Inc. lived there and Cecil's Inc. had no interest nor any control over the trailer. It was in all respects the home of Hughes and his family. The trailer was about 33 feet long and approximately 8 feet high and was a conventional tourist trailer. It had a window in the rear end approximately 2½ feet in height and slightly less in width, with a metal strip dividing the window from bottom to top and with a glass pane on either side of the center strip.

The streets had not been paved but Braswell Street and Ridgeway Street had been opened up to the extent that vehicles could pass over them.

The plaintiff lived with his mother on the East side of the general development and some three or four blocks East of North Carolina College. He had been away from home in the military service and had come back to Durham a day or two before this accident on a short furlough. Before he went away to the Army he had been accustomed to traveling through the wooded area of N. C. College along trails to his Mother's home. But the timber had been cut at the time of the accident and at the time that he was shot there were no trees to shade the area or to obstruct the view.

On the night of March 28, 1953, and shortly after 10:30 p. m., he bumped against the trailer at the rear window and frightened Mrs. Hughes who was sleeping on her bed, immediately under the window. She and her daughter screamed and her husband came into the trailer and asked what was the matter. Mrs. Hughes told him someone was trying to break into the window. Hughes yelled at the person to know who he was and what he was there for and to get away from there. There was no light in the trailer but the Moon was shining on the outside, it being about full Moon and approximately five hours high. The man did not get away from the window and Hughes got his shotgun and loaded it and ordered the man to get away. He saw the man stoop over and then straighten up and then take hold of the window. Whereupon, he shot at the object and cut a hole about six inches in diameter in the window and the load of shot hit the plaintiff in the face, as a result of which he lost several teeth, his nose was disfigured, one of his eyes was completely lost and the other will have to be removed. His right cheek was badly disfigured and as a result of these injuries he is blind and disfigured, notwithstanding numerous plastic surgery operations and probably

twenty-five more such operations will be required.

Hughes immediately called the police and an ambulance and also telephoned to the Superintendent in charge of construction.

The plaintiff's excuse for being at the rear end of the trailer is that he got lost on his way home, that he never did see the trailer, that he bumped against something dropping a pair of shoes off of his shoulder and that when he stooped down to pick up the shoes he was shot. The plaintiff was not drunk nor under the influence of intoxicants, so far as the evidence discloses, as he had just visited Dr. Hobson at the college from whom he borrowed the shoes a few minutes before the accident occurred.

There was no passageway behind the trailer nor were persons in the habit of being there and the presence of the plaintiff there under the circumstances above stated had no apparent reason so far as the inmates of the trailer were concerned and his failure to respond or to leave the trailer when he was ordered to do so and his continued presence at the window, apparently trying to get into the trailer after being ordered away, were circumstances calculated to make Hughes believe, and he had reasonable grounds to believe, that the plaintiff was trying to break into his residence and acting on that belief Hughes shot the plaintiff.

■. The evidence clearly shows that the plaintiff was not near any building which the defendant was erecting nor in anywise molesting anything except the trailer in which the defendant had no interest whatsoever. The act of Hughes under the foregoing circumstances was in the defense of his home and was not any act committed on behalf of the defendant by whom he was employed. It is true that he was a night-watchman but there is no evidence to show that he was ever authorized to use a deadly weapon nor was there any occasion for him to do so. The act was not in the prosecution of any duty which he owed to the defendant nor was it committed within the scope of his authority as such night-watchman.

■ There would be no doubt about the fact that Hughes had the same right to defend his home in the trailer in which he and his family resided to the same extent and in the same manner as if it had been a dwelling house. He also had the right to use such force as seemed reasonably necessary to protect his family against the invasion of his home, but like the law of self defense he is not an arbitrary judge of the necessity because he must have had reasonable grounds to believe that it was necessary to use such force. In determining whether the circumstances reasonably required the use of such force it is necessary to consider the facts and circumstances as they appeared to him. Even though the plaintiff may have had no evil design in being present at the rear window of the trailer and even though he may have been lost and may not have seen the trailer (although it seems utterly improbable that he would not see as big a thing as the trailer in the broad moonlight with nothing to obstruct it) nevertheless the conduct of the defendant Hughes must be weighed in the light of the knowledge Hughes had and the circumstances which confronted Hughes. State v. Johnson, 166 N.C. 392, 81 S.E. 941; State v. Nash, 88 N.C. 618, 621 and State v. Ellerbe, 223 N.C. 770, 28 S.E.2d 519. The deceased had a bottle of medicine in his hand which he held up in the moon-light which Johnson mistakenly thought was a pistol and he killed the deceased. The Supreme Court held that Johnson's guilt could not be determined on the basis of actual danger that confronted him but it was necessary to determine it on the basis of the facts as they appeared to him and the law generally on the subject and the right of a person to shoot in defense of himself or in the protection of his home is well established by the Supreme Court of North Carolina to the above effect in many other cases. State v.

558

Gray, 162 N.C. 608, 77 S.E. 833, 45 L.R.A.,N.S., 71; State v. Spruill, 225 N.C. 356, 34 S.E.2d 142; and State v. Rawley, 237 N.C. 233, at page 237, 74 S.E.2d 620.

■ It is likewise well settled that if the act of the defendant is excusable from a criminal offense on the ground of self defense, he is also exonerated from civil liability because the act is justifiable or excusable. In the case of New Orleans & N. E. R. Co. v. Jopes, 142 U.S. 18, at page 24, 12 S.Ct. 109, at page 111, 35 L.Ed. 919, the court holds:

"And the same rule of immunity extends to civil as to criminal cases. If the injury was done by the defendant in justifiable self-defense, he can neither be punished criminally, nor held responsible for damages in a civil action. Because the act was lawful, he is wholly relieved from responsibility for its consequences. 3 Bl.Comm. 121. The case of Morris v. Platt, 32 Conn. 75, fully illustrates the extent to which immunity goes. In that case it appeared that the defendant when assaulted had fired in self-defense, and, missing the assailant, had wounded an innocent by-stander, and the court held that the party thus assailed was free from both civil and criminal liability. The act which he had done was lawful, and without negligence, and no one, not even a third party, not an assailant, but an innocent by-stander, could make him answer in damages for the injury occasioned thereby.

"It would seem on general principles that, if the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity." See also, Nichols v. Champion Fibre Co., 190 N.C. 1, at page 4, 128 S.E. 471.

The act of Hughes in shooting the plaintiff is clearly an act committed not in the discharge of any duty required of him as a night watchman in protection of any property that belonged to the defendant Cecil's Inc. nor does it come within the scope of the authority of Hughes in his capacity as night watchman. If he had shot the plaintiff while in the act of doing something at the warehouse or in a building that was being constructed by the defendant, there would be some ground to conclude that he committed the act in his capacity of night watchman for the purpose of trying to protect his employer's property, in which event the defendant would no doubt have been liable although it did not authorize the specific act or may have forbidden it. Gallop v. Clark, 188 N.C. 186, 124 S.E. 145.

But the indisputable facts here show beyond controversy that the plaintiff was shot by reason of his presence at the rear window of the trailer and his continued presence there after being ordered to get away from the window. The broken glass, the wounds on the plaintiff's face and the entire evidence shows that the injury occurred there and in no wise at any structure of the defendant, nor one over which it had the slightest control.

■ Before an employer may be held liable for a tort committed by his employee, it is incumbent upon the plaintiff to show that the agent is an employee of the defendant and that he was engaged in the discharge of his employment by the defendant and acting within the scope of his authority. Gallop v. Clark, supra.

But these authorities also exclude liability if the tort is not committed by the servant while performing a duty for the defendant and within the scope of his authority.