IN THE SUPREME COURT OF NORTH CAROLINA

No. 281A23

Filed 23 August 2024

STATE OF NORTH CAROLINA

v.

ANGELA BENITA PHILLIPS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 290 N.C. App. 660 (2023), vacating judgment entered 11 May 2022 by Judge James F. Ammons, Jr. in Superior Court, Cumberland County and remanding for a new trial. Heard in the Supreme Court on 11 April 2024.

*Joshua H. Stein, Attorney General, by Hyrum J. Hemingway, Assistant Attorney General, for the State.*

*Mary McCullers Reece, for defendant.*

BERGER, Justice.

An individual has a fundamental right to defend his or her home from unlawful intrusion. This principle of personal liberty is grounded in natural law and English common law. *See* Semayne's Case (1604) 77 Eng. Rep. 194, 5 Co. Rep. 91 a. (stating "[t]hat the house of every one is to him as his . . . castle and fortress, as well for his defence against injury and violence"). Commonly known as the castle doctrine, the legislature codified and expanded the fundamental right of defense of habitation in Chapter 14 of the North Carolina General Statutes. Thus, the common law may aid our understanding, but statutes set the boundaries of the law in this area. *See News*

*& Observer Publ'g Co. v. State ex rel. Starling*, 312 N.C. 276, 281 (1984) ("When the General Assembly as the policy making agency of our government legislates with respect to the subject matter of any common law rule, the statute supplants the common law and becomes the law of the State.").

This case presents us with the opportunity to clarify the castle doctrine as established by the legislature. For the reasons set forth herein, we modify and affirm the decision of the Court of Appeals.

## I. Factual and Procedural Background

On 4 April 2021, Latonya Dunlap approached defendant's home because she believed defendant had complained about her to their landlord. Witness testimony differed as to whether Ms. Dunlap was angry or intoxicated when she entered defendant's front porch and knocked on the door. Witness accounts also differed as to what exactly occurred next, but all generally agreed that a brief confrontation followed, during which defendant either slapped Ms. Dunlap or struck her in the head with a gun.

Accounts of Ms. Dunlap's actions at this point are conflicting, but witnesses agreed that defendant subsequently fired multiple shots at Ms. Dunlap. One of these shots struck Ms. Dunlap's left side under her chest, causing injuries that required removal of her spleen and pancreas and left her permanently disabled.

Defendant was arrested and later indicted for assault with a deadly weapon with intent to kill inflicting serious injury. At trial, defendant asserted the

affirmative defenses of self-defense and defense of habitation, also known as the castle doctrine, and requested the relevant pattern jury instructions. The trial court expressed its concern over the castle doctrine instruction during the charge conference because, in its view, "self-defense is—whatever the form the legislature puts it—self-defense is to preserve life. It's not to give somebody a license to take somebody's life simply because they've come on their property."

The trial court therefore proposed altering the castle doctrine instruction by including an instruction that defendant did "not have the right to use excessive force." When defendant's counsel objected and pointed out that such prohibition "is used in the common law definition . . . , not the statutory law," the trial court asked, "[I]t's your argument that I can use deadly force at my door on anybody including a little Girl Scout selling cookies . . . ?" The trial court then stated, "Well, this is a troubling statute. . . . I still think this is a correct statement of the law and I do have reservations about it, but I have reservations about the whole thing."

As is relevant here, the trial court initially instructed the jury on the castle doctrine as follows:

> If the defendant assaulted the victim to prevent a forcible entry into the defendant's home or to terminate the intruder's unlawful entry the defendant's actions are excused and the defendant is not guilty. The State has the burden of proving to you from the evidence beyond a reasonable doubt that the defendant did not act in lawful defense of the defendant's home. The defendant was justified in using deadly force if such force was being used to prevent a forcible entry into the defendant's home, the defendant reasonably believed the intruder would kill or

inflict serious bodily harm to the defendant or others in the home, or intended to commit a felony in the home and the defendant reasonably believed that the degree of force the defendant used was necessary to prevent a forcible entry or to terminate the unlawful entry into the defendant's home.

A defendant does not have the right to use excessive force. The defendant had the right to use only such force as reasonably appeared necessary to the defendant under the circumstances to protect the defendant from death or great bodily harm. In making this determination you should consider the circumstances as you find them to exist from the evidence including the size, age, and strength of the defendant as compared to the victim; the fierceness of any assault upon the defendant; and whether the victim possessed a weapon.

Immediately following this portion of the instructions, a juror asked the trial court:

"Sir, can you repeat the last." The trial court acknowledged that "[i]t is confusing . . .

let me just start over" and began the recitation of instructions again. As is relevant

here, the trial court then instructed the jury that:

[A]bsent evidence to the contrary, the lawful occupant of a home is presumed to have held a reasonable fear of imminent death or serious bodily harm to herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply. The person against whom the defensive force was used was in the process of unlawfully and forcefully entering or had unlawfully and forcefully entered a home or if that person had removed or was attempting to remove another person against their will from the home, and two, that the person who uses the defensive force knew or had reasonable grounds to believe that an unlawful and forcible entry or unlawful or forcible act was occurring or had occurred.

However, the defendant does not have the right to

> use excessive force. The defendant had the right to use only such force as reasonably appeared necessary to the defendant under the circumstances to protect the defendant from death or great bodily harm. In making this determination you should consider the circumstances you find to have existed from the evidence including the size, age, and strength of the defendant as compared to the victim; the fierceness of the assault, if any, upon the defendant; and whether the victim possessed a weapon. Again, you, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time.

The jury determined that defendant did not act with the intent to kill Ms. Dunlap, and she was found guilty of assault with a deadly weapon inflicting serious injury. The trial court sentenced defendant to twenty-five to forty-two months incarceration, and defendant timely appealed.

At the Court of Appeals, defendant argued that the trial court "erroneously instructed the jury" on the castle doctrine defense "by including an instruction on the prohibition of excessive force." *State v. Phillips*, 290 N.C. App. 660, 660 (2023). A majority of the Court of Appeals' panel agreed with defendant and determined that "[u]nder the Castle Doctrine, excessive force is impossible unless the State rebuts the Castle Doctrine presumption" that the defendant held a reasonable fear of death or serious injury. *Id.* at 664. The majority reasoned that because the trial court's instruction on excessive force essentially eliminated the jury's ability to resolve the factual issue of whether such presumption was rebutted, the instruction was erroneous. *Id.* at 665. "Because the trial court's instruction was both erroneous and confusing," the majority concluded that defendant was prejudiced by this error,

vacated the trial court's judgment, and remanded the matter for a new trial. *Id.* at 665–66.

One judge dissented, arguing that the trial court did not err because the statutory castle doctrine defense "track[s] consistently with . . . common law defenses," including the common law prohibition against excessive force. *Id.* at 668 (Hampson, J., dissenting). The State appealed based on the dissent and argues that the castle doctrine statute preserves the common law's prohibition on excessive force. As this issue involves questions of statutory interpretation, we review de novo. *See State v. Lamp*, 383 N.C. 562, 569 (2022).

## II.    Analysis

### A. The Castle Doctrine's Evolution in North Carolina

"A man's house, however humble, is his castle, and his castle he is entitled to protect against invasion." *State v. Gray*, 162 N.C. 608, 613 (1913) (cleaned up). Thus, it is well-settled that "[a]n attack on the house or its inmates may be resisted by taking life." *Id.* (cleaned up). This fundamental principle of defense of habitation is known as the castle doctrine. Though the law has consistently protected one's right to defend his or her home with deadly force, the circumstances under which this use of force has been permitted by the courts have vacillated and evolved over the last century and a half.

In 1883, this Court considered a case in which the defendant's home was surrounded by an armed "band of young men" who "marched round his house, blowing

horns, ringing bells and firing guns and pistols." *State v. Nash*, 88 N.C. 618, 620 (1883). The defendant "submitted to the humiliating indignity and remained within doors, until his little daughter . . . ran to him with her face bleeding." *Id.* Believing that his daughter had been shot, the defendant "seized his gun and went to the door, saw the flash of fire-arms, and shot into the crowd," wounding one of the men. *Id.*

The trial court denied the defendant's request to testify as to the above information, and he was convicted of assault with a deadly weapon. *Id.* at 622. This Court awarded a new trial, reasoning that even though the defendant's daughter had in fact been injured by running into a table—not by a gunshot—the defendant "ought to have been acquitted" if he "ha[d] reasonable ground to believe that his daughter had been shot, and the assault upon him and his house was continuing." *Id.* at 620.

Thirty years later, this Court decided *Gray*, a case in which the defendant killed a man who, along with three other men, was attempting to break into the defendant's home. 162 N.C. at 612. The trial court instructed the jury that the killing would be justified if the victim was attempting to unlawfully enter the home and if the defendant reasonably believed deadly force was necessary to protect himself or his family, but that such justification would only be available if the jury found that one of the men outside was armed with a pistol. *Id.* at 611. The defendant was convicted of manslaughter and sentenced to three years imprisonment. *Id.* at 612.

This Court awarded the defendant a new trial, holding that the "guilt or innocence of the defendant does not depend upon the presence of a pistol in the hands

of the deceased," but rather on the "existence of a reasonable apprehension that [the defendant] or some member of his family was about to suffer great bodily harm" or a "reasonable belief that it was necessary to kill in order to prevent the violent and forceful entry of an intruder into his home." *Id.*

By 1966, this Court recited the evolving common law formulation of the castle doctrine as:

> When a trespasser enters upon a man's premises, makes an assault upon his dwelling, and attempts to force an entrance into his house in a manner such as would lead a reasonably prudent man to believe that the intruder intends to commit a felony or to inflict some serious personal injury upon the inmates, a lawful occupant of the dwelling may legally prevent the entry, even by the taking of the life of the intruder. Under those circumstances, the law does not require such householder to flee or remain in his house until his assailant is upon him, but he may open his door and shoot his assailant, if such course is apparently necessary for the protection of himself or family. But the jury must be the judge of the reasonableness of defendant's apprehension. A householder will not, however, be excused if he employs excessive force in repelling the attack, whether it be upon his person or upon his habitation.

*State v. Miller*, 267 N.C. 409, 411 (1966) (cleaned up).

In 1979, this Court noted that "the distinction between the rules governing defense of habitation and self-defense in the home is a fine one indeed." *State v. McCombs*, 297 N.C. 151, 158 (1979). In an attempt to prevent further blurring of that fine line, this Court concluded that under the common law formulation "the use of deadly force in defense of the habitation is justified only to *prevent* a forcible entry

into the habitation," and that "[o]nce the assailant has gained entry . . . the usual rules of self-defense replace the rules governing defense of habitation, with the exception that there is no duty to retreat." *Id.* at 156–57 (emphasis added).

In 1994, the General Assembly, the policy-making branch of our government, spoke on this issue when it enacted N.C.G.S. § 14-51.1. *See* An Act to Permit the Use of Deadly Force Against an Intruder Under Certain Circumstances and to Provide that a Lawful Occupant Does Not Have a Duty to Retreat from an Intruder, as Provided at Common Law, ch. 673, § 1, 1994 N.C. Sess. Laws 360. This statute provided that:

> (a)    A lawful occupant within a home or other place of residence is justified in using any degree of force that the occupant reasonably believes is necessary, including deadly force, against an intruder to prevent a forcible entry into the home or residence or to terminate the intruder's unlawful entry (i) if the occupant reasonably apprehends that the intruder may kill or inflict serious bodily harm to the occupant or others in the home or residence, or (ii) if the occupant reasonably believes that the intruder intends to commit a felony in the home or residence.
>
> (b)    A lawful occupant within a home or other place of residence does not have a duty to retreat from an intruder in the circumstances described in this section.
>
> (c)    This section is not intended to repeal, expand, or limit any other defense that may exist under the common law.

N.C.G.S. § 14-51.1 (1999) (repealed 2011). In contrast to the common law formulation that permitted the use of deadly force only to "[p]revent a forcible entry into the

-9-

habitation," *McCombs*, 297 N.C. at 156, the plain language of section 14-51.1 allowed the use of deadly force to "terminate the intruder's unlawful entry." N.C.G.S. § 14-51.1(a) (repealed 2011). Thus, "[i]n enacting N.C.G.S. § 14-51.1, the General Assembly broadened the defense of habitation to make the use of deadly force justifiable whether to *prevent* unlawful entry into the home or to *terminate* an unlawful entry by an intruder." *State v. Blue*, 356 N.C. 79, 89 (2002).

Despite this broadening of the common law formulation, however, section 14-51.1 retained the common law's prohibition against excessive force. *See* N.C.G.S. § 14-51.1(a) (repealed 2011) ("A lawful occupant . . . is justified in using any degree of force that the occupant *reasonably believes* is necessary . . . ." (emphasis added)); *see also Miller*, 267 N.C. at 411 ("A householder will not, however, be excused if he employs excessive force in repelling the attack . . . ."); *Gray*, 162 N.C. at 612 ("The guilt or innocence of the defendant . . . depend[s] upon . . . the reasonable belief that it was necessary to kill."); *Nash*, 88 N.C. at 622 ("The defendant must judge, at the time, of the ground of his apprehension, and he must judge at his peril; for it is the province of the jury on the trial to determine the reasonable ground of his belief.").

In 2011, the General Assembly repealed section 14-51.1 and replaced it with a more detailed statutory scheme that expanded and clarified use of force protections. *See* An Act to Provide When a Person May Use Defensive Force and to Amend Various Laws Regarding the Right to Own, Possess, or Carry a Firearm in North Carolina, S.L. 2011-268, § 2, 2011 N.C. Sess. Laws 1002, 1004. This statutory scheme provides,

in relevant part, that:

> [A] person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if *either* of the following applies:
>
> > (1)    He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
> >
> > (2)    Under the circumstances permitted pursuant to G.S. 14-51.2 [the castle doctrine statute].

N.C.G.S. § 14-51.3(a) (2023) (emphasis added).  Thus, the State argues that "the common law prohibition on excessive force survives enactment of North Carolina's uniform statutory defensive-force law" and the trial court properly instructed that defendant, "in relying on the statutory Castle Doctrine, was prohibited from using excessive force."

However, as section 14-51.3(a) provides that a person is "justified in the use of deadly force" if they possess a reasonable belief "that such force is necessary" *or* if the force is used "[u]nder the circumstances permitted" by the castle doctrine statute, the statute's plain language allows for two separate grounds justifying the use of deadly force.  The former requires the person to demonstrate a reasonable belief that the degree of force used was necessary to prevent imminent death or great bodily harm, or, in other words, that the degree of force used was proportional and not excessive. *See id.* § 14-51.3(a)(1).  The latter does not. *See id.* § 14-51.3(a)(2).  Instead, it requires *only* that the person demonstrate their use of deadly force occurred "[u]nder the

circumstances permitted" by the castle doctrine statute. *Id.* To resolve this case, we must therefore examine what is permitted under the castle doctrine.

## B. Operation of Section 14-51.2

The castle doctrine statute, entitled "Home, workplace, and motor vehicle protection; presumption of fear of death or serious bodily harm," is a clear and concise statutory enactment that has yet to be fully interpreted by this Court. *Id.* § 14-51.2. Because this case squarely raises questions of the statute's meaning, we take this opportunity to clarify the scope of the castle doctrine in North Carolina.[1]

As is relevant here, the statute provides:

> (a)     The following definitions apply in this section:
>
> > (1)     Home. — A building or conveyance of any kind, to include its curtilage, whether the building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it, including a tent, and is designed as a temporary or permanent residence.
> >
> > . . . .
>
> (b)     The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:

---

[1] Although our analysis here focuses on lawful occupants of a home defending against an unlawful and forcible entry, the statute applies equally to lawful occupants of motor vehicles and workplaces. *See* N.C.G.S. § 14-51.2(b). Our analysis and focus on facts particularly relevant to this case should not be construed to dilute applicability in these areas or other statutorily prescribed circumstances.

(1)     The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.

(2)     The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

(c)     The presumption set forth in subsection (b) of this section shall be rebuttable and does not apply in any of the following circumstances:

(1)     The person against whom the defensive force is used has the right to be in or is a lawful resident of the home, motor vehicle, or workplace, such as an owner or lessee, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person.

(2)     The person sought to be removed from the home, motor vehicle, or workplace is a child or grandchild or is otherwise in the lawful custody or under the lawful guardianship of the person against whom the defensive force is used.

(3)     The person who uses defensive force is engaged in, attempting to escape from, or using the home, motor vehicle, or workplace to further any criminal offense that involves the use or threat of physical force or violence against any individual.

(4)     The person against whom the defensive force is used is a law enforcement officer or bail bondsman who enters or attempts to enter a home, motor vehicle, or workplace in the lawful performance of his or her official duties, and the officer or bail bondsman identified himself or herself in accordance with any applicable law or the person using

force knew or reasonably should have known that the person entering or attempting to enter was a law enforcement officer or bail bondsman in the lawful performance of his or her official duties.

(5) The person against whom the defensive force is used (i) has discontinued all efforts to unlawfully and forcefully enter the home, motor vehicle, or workplace and (ii) has exited the home, motor vehicle, or workplace.

(d) A person who unlawfully and by force enters or attempts to enter a person's home, motor vehicle, or workplace is presumed to be doing so with the intent to commit an unlawful act involving force or violence.

(e) A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force, unless the person against whom force was used is a law enforcement officer or bail bondsman who was lawfully acting in the performance of his or her official duties and the officer or bail bondsman identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer or bail bondsman in the lawful performance of his or her official duties.

(f) A lawful occupant within his or her home, motor vehicle, or workplace does not have a duty to retreat from an intruder in the circumstances described in this section.

(g) This section is not intended to repeal or limit any other defense that may exist under the common law.

N.C.G.S. § 14-51.2.

The statute operates as follows. First, any person who "unlawfully and by force enters or attempts to enter" a home is "presumed to be doing so with the intent to

commit an unlawful act involving force or violence," and this presumption is non-rebuttable. *Id.* § 14-51.2(d). Second, a lawful occupant of a home who knows or has reason to believe such unlawful entry or attempted entry occurred or is occurring, and who uses force against the intruder that is intended or likely to cause death or serious bodily injury, is "presumed to have held a reasonable fear of imminent death or serious bodily harm" and has no duty to retreat from the intruder. *Id.* § 14-51.2(b), (f). Finally, if a lawful occupant of a home uses deadly force as permitted by this statute, he or she is "immune from civil or criminal liability for the use of such force," subject only to a narrow exception not relevant here. *Id.* § 14-51.2(e).

However, the statutory presumption of a lawful occupant's reasonable fear of death or serious bodily harm is "rebuttable and does not apply in *any* of the . . . circumstances" listed in subsection (c). *Id.* § 14-51.2(c) (emphasis added). The plain language of subsection (c), and the legislature's clear intent to significantly broaden castle doctrine protections by repealing section 14-51.1 and enacting section 14-51.2, compels the conclusion that the presumption of reasonable fear may be rebutted only by the circumstances set forth in subsection (c).

Practically, if the presumption could be rebutted by other circumstances, such as the victim's relative size or strength, it would serve no purpose. There is no meaningful difference between a jury considering whether a victim's inferior strength rebutted the presumption of the defendant's reasonable fear under the castle doctrine statute and a jury considering whether a victim's inferior strength undercut the

defendant's attempt to demonstrate his or her reasonable fear under the general self-defense statute. Accordingly, we hold that the castle doctrine's statutory presumption of reasonable fear may only be rebutted by the circumstances contained in section 14-51.2(c).

The expansive protections afforded to lawful occupants of a home does not mean that the castle doctrine is "a license to kill" or that the statute allows for "open season on Girl Scouts and trick-or-treaters." *State v. Copley*, 900 S.E.2d 904, 913 (N.C. 2024). The castle doctrine's primary legal protection—the presumption of reasonable fear—will only apply when the defendant satisfies the specific statutory requirements as detailed above. *See* N.C.G.S. § 14-51.2(b). However, if those requirements are met and the circumstances in section 14-51.2(c) are not present, the presumption applies, and the individual is "immune from civil or criminal liability."[2] *Id.* § 14-51.2(e).

## C. Excessive Force and the Presumption of Reasonable Fear

It is fundamental that a jury must be properly instructed on the law. *See State v. Walston*, 367 N.C. 721, 730 (2014) ("The jury charge is one of the most critical parts of a criminal trial."); *State v. Lee*, 370 N.C. 671, 674 (2018) ("Where competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case."

---

[2] However, justification for defensive force, whether under general self-defense or the castle doctrine, is not available to certain individuals. *See* N.C.G.S. § 14-51.4.

(cleaned up)).  Thus, absent a pretrial determination of immunity, when a defendant asserts the castle doctrine defense at trial, the jury must first determine whether the defendant is entitled to the presumption as set forth in section 14-51.2(b).  If the jury finds that the defendant is not entitled to the presumption, the castle doctrine statute does not apply and the jury must determine the defendant's culpability under section 14-51.3, the general self-defense statute.

Alternatively, if the jury finds that the defendant is entitled to the presumption, it must then determine whether the State has rebutted the presumption by proving any of the circumstances set forth in section 14-51.2(c).  If the jury finds that the State has rebutted the presumption, the jury must determine whether the defendant's use of force was proportional.  However, if the jury finds that the State failed to rebut the presumption, the defendant *must* be acquitted in accordance with section 14-51.2(e).  *See Copley*, 900 S.E.2d at 914 ("When a defendant lawfully defends his home in line with section 14-51.2 and the State does not rebut the statutory presumption of reasonableness, his force is a justified defensive measure immune from criminal culpability.").

In this case, the trial court told defendant's counsel that "self-defense is— *whatever the form the legislature puts it*—self-defense is to preserve life.  It's not to give somebody a license to take somebody's life simply because they've come on their property." (Emphasis added.)  The trial court then instructed the jury that even if the castle doctrine applied, "the defendant does not have the right to use excessive force"

and that "[t]he defendant had the right to use only such force as reasonably appeared necessary . . . to protect the defendant from death or great bodily harm."

Notwithstanding the trial court's seeming acknowledgment that its instruction was contrary to law, the State argues that "the trial court did not err by instructing that defendant, in relying on the statutory Castle Doctrine, was prohibited from using excessive force" because "the common law prohibition on excessive force survives enactment of" section 14-51.2. The State does not "dispute[ ] that the General Assembly possesses the authority to displace the common law through legislative action," *State v. McLymore*, 380 N.C. 185, 190 (2022), or contest our recent holding that "N.C.G.S. § 14-51.3 has supplanted the common law right to perfect self-defense to the extent that it addresses a particular issue." *State v. Benner*, 380 N.C. 621, 632 (2022). Instead, the State argues that because the castle doctrine statute does "not address an aspect of the common law of self-defense," i.e., the prohibition against excessive force, "the common law [prohibition] remains intact." *McLymore*, 380 N.C. at 191 n.2.

The common law prohibition against excessive force is a proportionality requirement under which a defendant must demonstrate their reasonable belief that the degree of force used was necessary to prevent the threatened harm. This common law principle is now codified in the general self-defense statute, which justifies "the use of deadly force" where the defendant "reasonably believe[d] that such force [wa]s necessary to prevent imminent death or great bodily harm to himself or herself or

another." N.C.G.S. § 14-51.3(a)(1).

Such is not the case in the castle doctrine context, however. By repealing section 14-51.1 and enacting a more comprehensive statutory scheme, the General Assembly abrogated this principle for the lawful occupants of homes, businesses, and automobiles. As noted above, the legislature has provided that "a person is justified in the use of deadly force and does not have a duty to retreat" in two separate scenarios. *Id.* § 14-51.3(a). First, if such person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another." *Id.* § 14-51.3(a)(1). Second, if such person uses deadly force "[u]nder the circumstances permitted pursuant to G.S. 14-51.2," the castle doctrine statute. *Id.* § 14-51.3(a)(2).

Thus, where deadly force is used under the circumstances permitted by the castle doctrine statute, the person "is presumed to have held a reasonable fear of imminent death or serious bodily harm." *Id.* § 14-51.2(b). And "[a] person who unlawfully and by force enters or attempts to enter a person's home . . . is presumed to be doing so with the intent to commit an unlawful act involving force or violence." *Id.* § 14-51.2(d).

"Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Camp*, 286 N.C. 148, 152 (1974) (cleaned up). Further,

a "marked difference in . . . two clauses, standing as they do in such close juxtaposition," as is the case with sections 14-51.3(a)(1) and (2), "gives clear indication that the Legislature intended to make a distinction" between the provisions. *Prendergast v. Prendergast*, 146 N.C. 225, 226 (1907).

The plain language of sections 14-51.2 and 14-51.3 demonstrates that if a lawful occupant of a home is cloaked with the protections afforded by the castle doctrine and the State fails to rebut the statutory presumption that the lawful occupant had reasonable fear, he or she is justified in the use of force, including deadly force. This is so because unlike the general self-defense statute, the castle doctrine statute itself provides that it is presumptively reasonable for a lawful occupant of a home to (1) perceive an intruder as a deadly threat and (2) respond to that threat with deadly force.

We therefore agree with the Court of Appeals' statement below that "[u]nder the Castle Doctrine, excessive force is impossible unless that State rebuts the Castle Doctrine presumption" by proving one of the five circumstances listed in section 14-51.2(c). *Phillips*, 290 N.C. App. at 664. Had the General Assembly intended to require lawful occupants to demonstrate a reasonable belief that deadly force was necessary, it would not have written a statute that explicitly provides the contrary.

Here, the trial court twice instructed the jury that even if defendant properly invoked the castle doctrine, she nonetheless "d[id] not have the right to use excessive force." As we have detailed herein, the jury should not have considered the

proportionality of defendant's force unless the jury found that either (1) defendant did not qualify to invoke the castle doctrine, or (2) defendant qualified, but the State properly rebutted the presumption of reasonable fear. Because the trial court's instruction failed to accurately recite the law as defined by the legislature, we affirm the portion of the Court of Appeals' decision concluding that this instruction was erroneous.

However, an error in a criminal trial does not warrant disregarding a jury's finding of guilt unless that error prejudiced the defendant. "A non-constitutional error," like the instructional error here, "is prejudicial 'when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Maske*, 358 N.C. 40, 57 (2004) (quoting N.C.G.S. § 15A-1443(a) (2003)). A defendant bears the burden of demonstrating such prejudice under section 15A-1443(a).

Here, the entirety of the Court of Appeals' prejudice analysis was that "[b]ecause the trial court's instruction was both erroneous and confusing, there is a reasonable possibility that the jury would have reached a different result if it received a proper instruction." *Phillips*, 290 N.C. App. at 665. As a determination of error is a prerequisite to reaching the question of prejudice, it appears the sole basis for the Court of Appeals' prejudice reasoning was that the trial court's instruction probably confused the jury. This, standing alone, is insufficient. Because the Court of Appeals failed to conduct an appropriate inquiry, we remand to the Court of Appeals for a

proper prejudice analysis.

### III.   Conclusion

It has long been recognized that an individual has a fundamental right to defend his or her home from unlawful intrusion.  The General Assembly, as the policy making branch of our government, has twice chosen to expand that common law principle by broadening the set of circumstances under which deadly force is justified.  The Court of Appeals correctly concluded that the trial court below erred by improperly instructing the jury to consider the proportionality of defendant's force even if she was entitled to the castle doctrine defense.  However, the Court of Appeals failed to properly analyze whether defendant was prejudiced by such error.  Accordingly, we AFFIRM the Court of Appeals' determination of error but VACATE its prejudice determination and REMAND for proper consideration.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Justice EARLS concurring in part and dissenting in part.

The Court finds error in the trial court's instruction and remands on the issue of prejudice. I agree that the jury instruction was erroneous. As delivered, it muddled the scope and nature of lawful defensive force embraced by the castle doctrine, codified in N.C.G.S. § 14-51.2. As the Court rightfully acknowledges, though, the castle doctrine is not a "license to kill." I expand on that point and explain why section 14-51.2 is not a blank check for violence.

Today a creature of legislation rather than common law, the castle doctrine functions as a "burden-shifting provision." *State v. Copley*, 900 S.E.2d 904, 913 (N.C. 2024) (cleaned up). On the front end, as the majority explains, the statute creates a rebuttable presumption of reasonable fear "when the defendant satisfies the specific . . . requirements" of N.C.G.S. § 14-51.2(b). That presumption is the linchpin of the castle doctrine—or, to borrow the majority's words, its "primary legal protection." It permits defensive force against specific conduct from a specific type of interloper— one who "unlawfully and forcefully enter[s]" a protected space. N.C.G.S. § 14-51.2(b)(1). The statute is also clear that the protected space is not only the interior of a home but also includes its "curtilage."[1] N.C.G.S. § 14-51.2(a)(1).

---

[1]"[T]he curtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings." *State v. Frizzelle*, 243 N.C. 49, 51 (1955); *see also State v. Blue*, 356 N.C. 79, 86 (2002).

The logic is as follows: A trespasser who illicitly and forcibly invades another's home, car, or workplace "is presumed to be doing so with the intent to commit an unlawful act involving force or violence." N.C.G.S. § 14-51.2(d). For that reason, an occupant aware of that unlawful and forcible entry is presumed to reasonably fear death or grievous harm at the trespasser's hands. *See* N.C.G.S. § 14-51.2(b). If the presumption applies and goes unrebutted by the State, it permits the occupant to fend off the intruder with deadly force. N.C.G.S. § 14-51.2(f).

At the same time, the presumption of reasonable fear delimits resort to violence. If a person does not "unlawfully and forcefully" enter another's property, their conduct does not fit the conditions listed in subsection 14-51.2(b). In that case, the statutory presumption of reasonable fear does not attach and deadly force is not permitted. Said another way, lethal force is not the appropriate response to a lawful and unforceful entry onto property. Unless an ingress triggers the elements set by subsection 14-51.2(b), it does not activate the castle doctrine.

That is why, as the Court recognizes, the castle doctrine does not declare "open season on Girl Scouts and trick-or-treaters." *Copley*, 900 S.E.2d at 913. When those groups step onto another's porch, their entry is generally lawful because of the "implicit license that typically permits [a] visitor to approach the home by the front path." *Id.* (quoting State *v. Grice*, 367 N.C. 753, 757 (2015) (cleaned up)). That implicit license also extends to a neighbor who knocks on the door to borrow a lawnmower, or a UPS worker who delivers a package. *See Florida v. Jardines*, 569 U.S. 1, 6–7 (2013)

(examining general contours of implicit license). In the same vein, the castle doctrine does not shield a homeowner who "invites the victim to his house" and "shoots them as they enter the front gate." *Copley*, 900 S.E.2d at 913. That, too, is because the entry was lawful—the unwitting invitee crossed the threshold with the owner's blessing.

These examples illustrate the castle doctrine's implicit limits. Whether selling cookies, seeking candy, delivering a package, or accepting an owner's invite, each hypothetical entrant came onto another's land lawfully and without force. Since none of those entrants "satisf[y] the specific statutory requirements" of subsection 14-51.2(b), the presumption of reasonable fear would not attach and permit deadly force.

Those examples also underscore the need for lucid and complete jury instructions in cases like Ms. Phillips'.[2] A proper explanation of the law would have given jurors "a clear decision tree" for examining Ms. Phillips' force and, in turn, her criminal liability. *See Copley*, 900 S.E.2d at 915 (Barringer, J., concurring). First, jurors should have decided whether Ms. Dunlap "unlawfully and forcefully entered" Ms. Phillips' porch in line with subsection 14-51.2(b). That inquiry would consider

---

[2] Accurate jury instructions are, of course, a necessity in all criminal trials. *See Copley*, 900 S.E.2d at 915 ("Under principles of due process, jury instructions infected with legal error often require a new trial."). But as members of this Court have recently observed, instructions on "the various self-defense provisions that are now in place" have proven uniquely susceptible to confusion. *See id.* (Barringer, J., concurring) ("It is greatly concerning that our State's pattern jury instructions continue to leave jurors confused on what they may or may not consider in self-defense and castle doctrine circumstances . . . Instructions that provide jurors with a clear decision tree are critical for a jury to be able to accurately determine whether the presumptions provided by § 14-51.2 have been rebutted. A jury must intentionally and methodically determine whether that presumption has been rebutted.").

whether an implicit license permitted Ms. Dunlap's entry, the scope of that license, and whether Ms. Dunlap exceeded it, thus rendering her presence unlawful. The jury's answer on that issue would dictate whether the presumption of reasonable fear attached and whether the castle doctrine applied at all.

For the same reason, it would equip jurors to select and employ the proper self-defense standard. If Ms. Dunlap's entry did not meet the predicates listed in subsection 14-51.2(b), the presumption of reasonable fear would not come into play. That is, if Ms. Dunlap was lawfully on the property, the castle doctrine's key presumption would not apply. *See* N.C.G.S. § 14-51.2(e); *see also Copley*, 900 S.E.2d at 914. In that event, jurors would scrutinize Ms. Phillips' actions under section 14-51.3, rather than section 14-52.2.

On the other hand, if jurors concluded that Ms. Dunlap's entry was "unlawful[ ] and forceful[ ]" as required by subsection 14-51.2(b), that finding would trigger the presumption of reasonableness. *See* N.C.G.S. § 14-51.2(b). It would also point jurors to their next task: Deciding whether the State rebutted the presumption and therefore "dislodged" the castle doctrine's protections. *See Copley*, 900 S.E.2d at 911 (citing N.C.G.S. § 14-51.2(c)). Here, however, the jury instructions did not accurately explain the law, thus depriving jurors of the "clear decision tree" needed to assess the legality of Ms. Phillips' force. *See id.* at 915 (Barringer, J., concurring).

I part ways with the majority on prejudice. In this case, that question is fairly presented and ripe for review—it was teed up by the majority and dissent below,

briefed by the parties, and encompassed by the record. Rather than remanding to the Court of Appeals, I would reach and resolve whether Ms. Phillips has shown a reasonable possibility of a different result but for the trial court's error. *See State v. Maske*, 358 N.C. 40, 57 (2004).

Punting the prejudice analysis back to the lower courts is an unnecessary drain on judicial resources. It forces Ms. Phillips and the State to reargue an issue already raised, briefed, and ripe for decision. Throughout our precedent, this Court has declined to remand cases based on the same interests at stake here—"judicial economy," "fairness to the parties," and settling protracted litigation. *See N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 665 (2004); *see also Mann Media, Inc. v. Randolph Cnty. Plan. Bd.*, 356 N.C. 1, 15–16 (2002) (explaining that remand would disserve "the interests of judicial economy" because the "central issue" remaining "involves evaluation of evidence" and the "entire record of the hearing is before us").

Because I would decide whether the trial court's error prejudiced Ms. Phillips, I dissent from the Court's decision to remand.

Justice RIGGS joins in this concurring in part and dissenting in part opinion.